WHEELER et al., Appellants,

v.

WISE et al., Appellees.

[Cite as *Wheeler v. Wise* (1999), 133 Ohio App.3d 564.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 98AP–812.

Decided May 11, 1999.

*Butler, Cincione, DiCuccio, Dritz & Barnhart, N. Gerald DiCuccio* and *Gail M. Zalimeni,* for appellants.

*Lane, Alton & Horst, Gregory D. Rankin* and *Stephen B. Yurik,* for appellees.

LAZARUS, Presiding Judge.

On March 15, 1996, plaintiffs, Larry and Shirley Wheeler, filed medical negligence, loss-of-consortium, and punitive damages claims against defendants Se–Hwan Whang, M.D., Aniano B. DeJosef, M.D., Henry A. Wise, M.D., Marietta Memorial Hospital, and Ohio Urology, Inc. Plaintiffs' complaint alleged that defendants were negligent in diagnosing Larry Wheeler with adenocarcinoma and in performing an unnecessary radical retropubic prostatectomy as a result of that diagnosis. On January 26, 1998, the trial court granted a motion for summary judgment filed by defendants Ohio Urology, Inc. and Dr. Wise, and dismissed plaintiffs' claims against those defendants for punitive damages. On May 22, 1998, plaintiffs' remaining claims were tried to a jury, which returned a verdict in defendants' favor. Plaintiffs now appeal raising the following four assignments of error:

"1. The verdict of the jury was against the manifest weight of the evidence. The evidence presented mandated the conclusion that defendants were negligent as a matter of law in failing to have the pathology slides from Marietta Memorial Hospital reviewed prior to undertaking to perform surgery upon plaintiff Larry Wheeler.

"2. The trial court erred in failing to allow the jury to hear portions of Dr. Robert Lewis' deposition to correct the misstatement made by defense counsel in

closing argument. The trial court's failure was prejudicial to the plaintiffs by adversely affecting the verdict in this matter.

"3. The trial court erred in failing to instruct the jury on the issue of informed consent.

"4. The trial court erred in granting defendants' motion for partial summary judgment on the issue of punitive damages because genuine issues of material fact existed with respect to whether defendant Wise acted with actual malice."

The events leading to this lawsuit are essentially undisputed. In 1995, Larry Wheeler's ("plaintiff") family physician discovered abnormal lumps on both sides of plaintiff's prostate. As a result, plaintiff was referred to be examined by Dr. Se–Hwan Whang, a urologist who practices medicine at Marietta Memorial Hospital. Whang examined plaintiff for the first time on July 24, 1995. During the course of that examination, Whang confirmed that plaintiff had two abnormal lumps, on either lobe of his prostate. Based upon the abnormal physical characteristics of plaintiff's prostate, Whang took two tissue samples from the left lobe, and one from the right lobe of the prostate. The samples were then sent to be examined by Dr. Aniano DeJosef, a board-certified pathologist who had practiced medicine at Marietta Memorial Hospital since 1976. Upon examining the tissue samples, DeJosef concluded that plaintiff had advanced adenocarcinoma of the prostate. Whang called DeJosef to be certain that the diagnosis of cancer was correct. According to the testimony given at trial, DeJosef was unequivocal about his diagnosis.

After receiving the results of plaintiff's lab work, Whang met with plaintiff on two separate occasions in order to discuss treatment options. On Whang's advice, plaintiff elected to undergo a procedure known as a radical retropubic prostatectomy and was referred to defendant Henry Wise, M.D. ("defendant") for surgery. It was not uncommon for Whang to refer patients to defendant for surgical treatment of cancer of the kidney, bladder, and prostate. As he had done with approximately fifty referrals before, Whang forwarded to defendant all of plaintiff's records, including plaintiff's radiology films and the pathology report prepared by DeJosef.

Defendant examined plaintiff for the first time in August 1995. At that time, defendant compiled a detailed medical history and conducted his own physical examination. According to defendant, the results of the physical examination revealed abnormalities in plaintiff's prostate that were consistent with the findings of plaintiff's family physician, and with Whang and DeJosef's diagnosis of cancer. Defendant also independently reviewed plaintiff's radiology films and the pathology report prepared by DeJosef. Defendant testified that he relied upon his own findings as well as those of plaintiff's other treating physicians in formulating his diagnosis of plaintiff's condition. Based upon that diagnosis,

defendant surgically removed plaintiff's prostate on October 17, 1995. Upon removal, defendant sent tissue samples to be examined by a pathologist at Riverside Methodist Hospital. The post-surgical pathology report revealed that plaintiff's prostate was not cancerous.[1]

In their first assignment of error, plaintiffs argue that the jury's verdict was against the manifest weight of the evidence. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.

In order to establish medical malpractice, plaintiffs were required to demonstrate by a preponderance of the evidence that the injury complained of was caused by a practice that a physician of ordinary skill, care, and diligence would not have employed and that plaintiff's injury was the direct and proximate result of such practice. *Bruni v. Tatsumi* (1976), 46 Ohio St.2d 127, 75 O.O.2d 184, 346 N.E.2d 673, paragraph one of the syllabus. With few exceptions, the trier of fact must determine the applicable standard of care in a medical malpractice case from the testimony of expert witnesses. In *Turner v. Children's Hosp., Inc.* (1991), 76 Ohio App.3d 541, 602 N.E.2d 423, we explained:

"Ordinarily, the issue of whether the physician has employed the requisite care must be determined from the testimony of experts, unless the standard of care is sufficiently obvious that laymen could reasonably evaluate the physician's conduct. * * * Such expert testimony serves to aid the trier of fact in determining if there was malpractice. For, although customary practice is evidence of what a reasonably prudent physician would do under like or similar circumstances, it is not conclusive in determining the applicable standard required." *Id.* at 548, 602 N.E.2d at 427.

In their first proposition of law, plaintiffs would have this court judicially establish the applicable standard of medical care to be applied to plaintiffs' claims. Specifically, plaintiffs ask that we adopt a rule that holds that the standard of medical care would have required, as a matter of law, that defendant have another pathologist render a second opinion prior to performing surgery on plaintiff. Stated as a general rule, plaintiffs argue that a surgeon must personally know and trust a pathologist who renders an opinion prior to performing any surgery on a patient. If the surgeon does not know the pathologist, then

---

1. Tissue samples were also sent to the Mayo Clinic, where it was determined that the abnormality observed on physical examination was likely due to a condition known as high-grade prostatic intraepithelial neoplasia.

plaintiffs would have the law require the surgeon to obtain a second opinion from a pathologist with whom the surgeon was acquainted. While there are some situations where the standard of care is sufficiently obvious that expert testimony is not required, we do not believe that this is such a case. See *Melnyk v. Cleveland Clinic* (1972), 32 Ohio St.2d 198, 61 O.O.2d 430, 290 N.E.2d 916 (physician left metallic forceps and nonabsorbent sponge inside plaintiff's abdomen).

■ Having carefully considered the uncertain and potentially far-reaching ramifications associated with plaintiffs' proposition, we are unwilling to judicially set forth the applicable standard of medical practice based upon the facts presented in this appeal. Moreover, we find that there was substantial, credible evidence offered during the course of the trial that the applicable standard of care did not require that plaintiff's pathology slides be re-reviewed by another pathologist prior to surgery. In this regard, Wise testified that the standard of care did not so require. Additionally, Daniel Bohl, M.D., defendant's expert witness, also testified that the standard of care did not require a second opinion from another pathologist before proceeding to surgery. While plaintiffs introduced expert testimony to the contrary, under the circumstances, we are unable to find that the trier of fact lost its way and rendered an opinion that was clearly against the manifest weight of the evidence. Therefore, plaintiffs' first assignment of error is not well taken.

■ In their second assignment of error, plaintiffs argue that the trial court erred when it refused to allow plaintiffs to reopen their case in order to read portions of Dr. Robert Lewis's discovery deposition to the jury. Plaintiffs' argument is premised upon their belief that defense counsel purposely misled the jury during closing argument when he stated that plaintiffs' expert did not criticize the care rendered by Wise to plaintiff. Specifically, plaintiffs rely upon the following comments made by defense counsel:

"Now, the plaintiffs presented testimony from three physicians: Dr. Lewis, Dr. Penn, Dr. Rogers. * * * Dr. Lewis practices medicine in this community. [Plaintiffs' counsel] sent Mr. Wheeler to Dr. Lewis for a followup evaluation and a followup treatment. Dr. Lewis was not asked about the standard of care questions by the plaintiffs. Dr. Lewis did not express any criticism of Dr. Wise's treatment of Mr. Wheeler. He only addressed matters pertaining to treatment of incontinence, treatment of impotence. That testimony is disputed."

Plaintiffs argue that defense counsel knowingly and purposely attempted to mislead the jury in light of the following excerpt taken from Lewis's discovery deposition:

"Q. [By defense counsel.] * * * I do want to ask you just a couple of questions about what opinions you may hold. * * * I know the way things stand right now, [plaintiffs' counsel] doesn't intend to ask you these questions, but he's also stated that, if asked, you apparently have formulated opinions regarding the care rendered by Dr. Wise. Are you critical or do you hold any opinions regarding the treatment rendered by Dr. Wise of Mr. Wheeler?

"A. Now, if you understand I don't have records to substantiate the opinions.

"Q. Your knowledge is based upon—

"A. From my knowledge—

"Q. —What [plaintiffs' counsel] has told you then basically?

"A. Correct.

"Q. He has summarized the facts of the case for you?

"A. Correct.

"Q. And if you assume those facts to be true, would you be critical of Dr. Wise?

" * * * *

"A. I would be critical of any physician who would offer radical prostatectomy to a patient without examining the patient entirely, and that means the patient physically, which I believe Dr. Wise did, and having the slides analyzed by a pathologist with whom you have trust and faith."

Great latitude is given to counsel in the presentation of closing argument. *State v. Champion* (1924), 109 Ohio St. 281, 289, 142 N.E. 141, 143–144. Generally, included within the bounds of permissible argument are references to the nature and scope of the evidence. *State v. Ferguson* (1983), 5 Ohio St.3d 160, 5 OBR 380, 450 N.E.2d 265. However, where there is a substantial likelihood that the jury may be misled by remarks that are designed to misrepresent the evidence, or that are calculated to arouse passion or prejudice, the trial court may intervene in order to prevent a miscarriage of justice. See *Mahan v. Bethesda Hosp., Inc.* (1992), 84 Ohio App.3d 520, 527, 617 N.E.2d 714, 719. Because the determination of whether the acceptable bounds of a closing argument have been exceeded lies within the discretion of the trial court, the record must clearly demonstrate highly improper argument by counsel that tends to inflame the jury. *Pang v. Minch* (1990), 53 Ohio St.3d 186, 194, 559 N.E.2d 1313, 1321, citing *Ohio & W. Pennsylvania Dock Co. v. Trapnell* (1913), 88 Ohio St. 516, 521, 103 N.E. 761, 763; and *Braeunig v. Russell* (1960), 170 Ohio St. 444, 446, 11 O.O.2d 200, 201–202, 166 N.E.2d 240, 242–243.

Having reviewed the closing argument presented to the jury, we are unable to conclude that defense counsel's statements were inappropriate or prejudicial. Counsel's comments appear to have been a fair characterization of the testimony given by Lewis during the course of his examination. Thus, under these circumstances we are unable to conclude that the trial court's refusal to allow plaintiffs to reopen their case in order to introduce new rebuttal evidence was an abuse of discretion. Accordingly, plaintiffs' second assignment of error is not well taken.

In their third assignment of error, plaintiffs maintain the trial court erred when it failed to instruct the jury on the issue of informed consent. The elements of the tort of informed consent were stated by the Ohio Supreme Court in the syllabus of *Nickell v. Gonzalez* (1985), 17 Ohio St.3d 136, 17 OBR 281, 477 N.E.2d 1145:

"The tort of lack of informed consent is established when:

"(a) The physician fails to disclose to the patient and discuss the material risks and dangers inherently and potentially involved with respect to the proposed therapy, if any;

"(b) the unrevealed risks and dangers which should have been disclosed by the physician actually materialize and are the proximate cause of the injury to the patient; and

"(c) a reasonable person in the position of the patient would have decided against the therapy had the material risks and dangers inherent and incidental to treatment been disclosed to him or her prior to the therapy."

The doctrine of informed consent is based upon the belief that every individual has a right to determine what shall be done with his or her own body. *Siegel v. Mt. Sinai Hosp.* (1978), 62 Ohio App.2d 12, 21, 16 O.O.3d 54, 60, 403 N.E.2d 202, 208–209. Accordingly, Ohio law requires that physicians disclose the material risks and potential dangers associated with the proposed therapy. In this instance, however, the basis for plaintiffs' claim is not that defendant failed to disclose the potential risks associated with performing a radical retropubic prostatectomy, but upon the basis that defendant did not discuss with plaintiffs the potential risks associated with an incorrect diagnosis of cancer. However, the law of informed consent has never required that the physician fully inform the patient of all potential risks. *Turner v. Children's Hosp., Inc.* (1991), 76 Ohio App.3d 541, 554, 602 N.E.2d 423, 431, citing *O'Brien v. Angley* (1980), 63 Ohio St.2d 159, 17 O.O.3d 98, 407 N.E.2d 490.

In this case, plaintiffs confuse their cause of action sounding in negligence for plaintiff's improper diagnosis with a cause of action designed to prevent an

unauthorized or uninformed touching. A review of the record reveals that there was no dispute but that defendant discussed with plaintiffs the risks associated with undergoing a surgical radical retropubic prostatectomy. Therefore, the trial court properly refused to submit the issue of informed consent to the jury. Plaintiffs' third assignment of error is not well taken.

In their fourth assignment of error, plaintiffs argue the trial court erred in granting defendants' motion for partial summary judgment on plaintiffs' claim for punitive damages. We overrule plaintiffs' fourth assignment of error on two grounds.

First, the rationale behind allowing punitive damages is not to compensate a plaintiff, but to punish and deter certain conduct by a defendant. *Preston v. Murty* (1987), 32 Ohio St.3d 334, 335, 512 N.E.2d 1174, 1175–1176. Ohio law is clear that punitive damages are not recoverable from a defendant unless (1) the actions or omissions of the defendant demonstrate malice or a conscious disregard for the rights and safety of the plaintiff and (2) the plaintiff in question has adduced proof of actual damages that resulted from defendant's conduct. *Malone v. Courtyard by Marriott L.P.* (1996), 74 Ohio St.3d 440, 445, 659 N.E.2d 1242, 1246–1247. See, also, *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 650, 635 N.E.2d 331, 342 ("[P]unitive damages are awarded as a mere incident of the cause of action in which they are sought.").

As noted above, the jury's verdict in this case was firmly based upon the evidence presented at trial. Thus, plaintiffs are unable to demonstrate that they have suffered a compensable injury as a result of defendant's conduct. Consequently, there is no basis upon which to rest an award of punitive damages. Because there is no basis for the award, any alleged error of the trial court in granting defendant's motion for summary judgment is rendered moot. Moreover, even if there were an award upon which to rest plaintiffs' claim for punitive damages, under the circumstances, we agree with the trial court that plaintiffs failed to demonstrate the existence of a genuine issue of material fact in regard to that claim.

The malice necessary for an award of punitive damages is alternatively defined as (1) that state of mind under which a person's conduct is characterized by hatred, ill will, or a spirit of revenge; or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm. *Preston, supra.* Before submitting the issue of punitive damages to a jury, a court must first determine whether sufficient evidence has been presented to demonstrate that the defendant consciously disregarded the plaintiff's rights or safety. *Id.*

It is clear that the first type of malice defined in *Preston* is not at issue, given the facts and circumstances of this case. As to the second type, we agree with the finding of the trial court that plaintiffs have failed to demonstrate the existence of a genuine issue of material fact as to the presence of the positive element of conscious wrongdoing. In essence, plaintiffs' position is that defendant's failure to obtain a second opinion from a pathologist with whom defendant was professionally acquainted constituted a reckless disregard for plaintiff's health and safety. We are unable to agree.

Beyond mere innuendo, plaintiffs presented no evidence that would raise a genuine issue of material fact as to defendant's conscious or knowing disregard of plaintiff's health and safety. Rather, the evidence presented to the trial court demonstrated that it was common practice in referrals to have the lab work and other necessary testing done on a referred patient prior to his or her arrival in Columbus for surgical treatment. In addition, defendant compiled a detailed medical history, conducted his own physical examination, and reviewed the lab work that had been forwarded from Marietta Memorial Hospital. The mere fact that a second opinion was not obtained does not, on its face, demonstrate a "positive element of conscious wrongdoing." *Preston, supra,* 32 Ohio St.3d at 335, 512 N.E.2d at 1176. Accordingly, plaintiffs' fourth assignment of error is not well taken.

For the foregoing reasons, all four of plaintiffs' assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

TYACK and JOHN C. YOUNG, JJ., concur.

JOHN C. YOUNG, J., retired, of the Tenth District Court of Appeals, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.