[Cite as *Lindsey v. Univ. of Toledo Med. Ctr.*, 2011-Ohio-875.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

IRENE LINDSEY

      Plaintiff

      v.

UNIVERSITY OF TOLEDO dba UNIVERSITY OF TOLEDO MEDICAL CENTER, et al.

      Defendants
      Case No. 2008-01243

Judge Clark B. Weaver Sr.

DECISION

{¶ 1} On January 9, 2008, plaintiff filed this action against defendant, University of Toledo Medical Center (UTMC),[1] alleging that the medical care rendered to plaintiff fell below the accepted standard of care and that due to the circumstances surrounding plaintiff's injury, the doctrine of res ipsa loquitur applies. The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.

{¶ 2} Plaintiff entered UTMC on January 9, 2007, in order to undergo revision of a previous knee replacement. Plaintiff testified that the surgery lasted approximately four hours, that she had no recollection of the time that she was in the recovery room, and that when she was transferred to her hospital room, she became aware of a painful, burning sensation under her upper left arm. According to plaintiff, her upper arm bore an imprint from the blood pressure cuff that had been placed there during surgery. She also noted that her skin was reddened and that "steam" was coming off her arm. In

---

[1]For the purposes of this decision, defendant shall refer to UTMC.

addition, plaintiff noted an unusual odor and that blisters had formed and were "hanging down." Plaintiff stated that she showed the area to her daughter and asked her to photograph the injured areas. Plaintiff maintains that the injury was the result of improper placement of the blood pressure cuff and excessive friction.

{¶ 3} Plaintiff alleges that defendant's employees were negligent inasmuch as such an injury should not have happened in the normal course of knee replacement surgery. Plaintiff also asserts that the doctrine of res ipsa loquitur applies to the circumstances of this case in that she was under general anesthesia during the surgery and the instrumentality which she alleges caused the harm was under the sole control of defendant.

{¶ 4} In order to prevail on a claim of medical malpractice or professional negligence, plaintiff must first prove: 1) the standard of care recognized by the medical community; 2) the failure of defendant to meet the requisite standard of care; and 3) a direct causal connection between the medically negligent act and the injury sustained. *Wheeler v. Wise* (1999), 133 Ohio App.3d 564; *Bruni v. Tatsumi* (1976), 46 Ohio St.2d 127. The appropriate standard of care must be proven by expert testimony. *Bruni* at 130. That expert testimony must explain what a medical professional of ordinary skill, care, and diligence in the same medical specialty would do in similar circumstances. Id.

{¶ 5} "The doctrine of res ipsa loquitur is a rule of evidence that permits a plaintiff to prove negligence circumstantially upon showing that (1) the instrumentality that caused the harm was in the exclusive control of the defendants, and (2) the event that caused the harm was not of the type that would normally occur in the absence of the defendants' negligence. See *Wiley v. Gibson* (1990), 70 Ohio App.3d 463, 465, 591 N.E.2d 382, 8 Anderson's Ohio App. Cas. 19; see, also, *Merritt v. Deaconess Hosp.* (Sept. 7, 1976), 1st Dist. No. C-750343, 1976 Ohio App. LEXIS 6454." *Bowden v. Annenberg*, Hamilton App. No. C-040499, 2005-Ohio-6515, ¶41.

{¶ 6} "The applicability of res ipsa loquitur must be determined by the trial court on a case-by-case basis. See *Jennings Buick, Inc. v. Cincinnati* (1980), 63 Ohio St.2d 167, 171, 406 N.E.2d 1385. Whether the plaintiff has offered sufficient evidence to warrant application of the doctrine is a question of law. See *Hake v. Wiedemann Brewing Co.* (1970), 23 Ohio St.2d 65, 67, 262 N.E.2d 703." Id. at ¶42.

{¶ 7}   On cross-examination, plaintiff testified that she was returned to her room in the late afternoon and that she could not recall exactly when her daughter took the pictures of her injury but that it might have been two or three days after surgery. Plaintiff identified two sets of photographs, those taken at the hospital and another set taken after she had been discharged to her home.  (Plaintiff's Exhibit 5.)

{¶ 8}   Plaintiff recalled that during her stay in the hospital, a biopsy was taken from the area under her left arm.  Plaintiff related that the wound was treated with "pink pads" and that she was given a "pink swab to draw the infection out."  Plaintiff testified that the blisters continued to appear and spread out and that, although the damaged tissue eventually healed, she was left with an area of scarring.

{¶ 9}   Defendants offered the deposition testimony of, and exhibits identified by, Dr. Jean Thomas, a dermopathologist who reviewed the pathology slides that correlate with plaintiff's biopsy.   Plaintiff objected to the testimony based upon the fact that no expert report from Dr. Thomas was provided to plaintiff prior to her deposition and that plaintiff did not receive copies of the slides and corresponding photographs relied upon by Dr. Thomas even though plaintiff had requested such documents in discovery. Defendants argued that Dr. Thomas was called as a fact witness, and that defendants produced everything that plaintiff asked for in discovery.  Upon review, the court finds that defendants attempted to elicit expert testimony from Dr. Thomas without first providing plaintiff with an expert report in violation of the court's June 3, 2008 trial order and L.C.C.R. 7(E).   Thus, the court sustains plaintiff's objections and grants plaintiff's motion to exclude both the testimony and associated exhibits.  Defendants' Exhibits C, D, E, F, and G are not admitted into evidence.

{¶ 10} Dr. Lori Gottwald testified that she is board-certified in dermatology and that she was consulted by plaintiff's surgeon to examine plaintiff on January 11, 2007. Dr. Gottwald testified that she observed three fluid-filled blisters or bullae near plaintiff's left axillary area and that some of the surrounding skin had open erosions as well. Based upon her observations, Dr. Gottwald initially attributed the blisters to either traumatic or frictional causes; however, she also included localized bullous pemphigoid as a differential diagnosis.  Dr. Gottwald testified that she became more convinced that the condition was caused by bullous pemphigoid once she had reviewed the biopsy and

tissue-staining results. Nonetheless, Dr. Gottwald acknowledged that she never formally diagnosed plaintiff with bullous pemphigoid during her hospital stay.

{¶ 11} Plaintiff presented the videotaped deposition of her expert dermatologist, Dr. Evan Schlam. Dr. Schlam testified that he had treated many patients for bullous pemphigoid, which he described as an autoimmune blistering disease. He described the condition as causing large fluid-filled lesions that are widespread on the body, generally afflicting elderly patients.[2] Dr. Schlam opined that although bullous pemphigoid is certainly a possible explanation for plaintiff's condition, there are several more likely possibilities. Dr. Schlam based his opinion, in part, upon the observation that plaintiff had only one affected area whereas bullous pemphigoid generally afflicts more than one area of the body. Dr. Schlam testified that localized bullous pemphigoid rarely occurred and thus he concluded that it was very unlikely that plaintiff suffered an attack of bullous pemphigoid.

{¶ 12} On cross-examination, Dr. Schlam stated that he did not believe that plaintiff suffered from bullous pemphigoid, that there were several other reasons for the blisters, and that he was not offering an opinion as to the treatment rendered to plaintiff. Dr. Schlam opined that more likely than not the blisters were caused by something frictional rather than from bullous pemphigoid. Nonetheless, Dr. Schlam admitted that he could not opine, to a reasonable degree of medical certainty, what was the specific cause of the blisters.

{¶ 13} "Res ipsa loquitur cannot be applied where there are multiple sources of injury, only one of which satisfies the doctrine's threshold requirements. In *Jennings Buick v. Cincinnati*, the Ohio Supreme Court noted that * * * 'there was evidence presented to the trier of the facts which would have allowed the jury to find that one or another potential cause of the injury not attributable to the negligence of the [defendant] was equally as probable as was a cause attributable to the negligence of the [defendant].'" *Bowden*, supra, at ¶45, quoting *Jennings* at 174.

{¶ 14} "Where it has been shown by the evidence adduced that there are two equally efficient and probable causes of the injury, one of which is not attributable to the

---

[2]Plaintiff testified that at the time of this surgery she was 71 years old.

negligence of the defendant, the rule of res ipsa loquitur does not apply."  Id. at ¶46, quoting *Jennings* at 171.

**{¶ 15}** Plaintiff relies on her own observations as the basis for identifying the cause of the blisters.  As such, plaintiff maintains that the blood pressure cuff was misapplied during surgery and that the blisters resulted from undue friction caused by the improperly positioned cuff.  Upon review, the court finds that plaintiff's testimony was not particularly credible and that, at times, her recollections were both inconsistent and blatantly contradictory.  Inasmuch as the record contains evidence which supports more than one probable cause of plaintiff's injury, at least one of which would not have been attributable to the negligence of employees at UTMC, the court concludes that res ipsa loquitur is not applicable in this case.

**{¶ 16}** "In order to recover against a defendant in a tort action, plaintiff must produce evidence which furnishes a reasonable basis for sustaining his claim. If his evidence furnishes a basis for only a guess * * * as to any essential issue in the case, he fails to sustain the burden as to such issue."  *Landon v. Lee Motors, Inc.* (1954), 161 Ohio St. 82, at paragraph six of the syllabus.  *Mikes v. Kent State University* (Mar. 8, 1990), Franklin App. No. 89AP-749.

**{¶ 17}** Michele Stewart-Pushman testified that she is a surgical nurse at UTMC and that she was present in the operating room on January 9, 2007.  Based upon a review of the records that she made during the procedure, she did not observe any burned or blistered area on plaintiff's skin; rather, she noted that plaintiff's skin was dry and intact.

**{¶ 18}** Dr. Christopher Lewis testified that he was the anesthesia resident assigned to plaintiff's case on January 9, 2007, that either he or the attending anesthesiologist would have placed the blood pressure cuff on plaintiff's upper arm, and that he would have transported plaintiff to the recovery room where most likely a nurse would have applied a different blood pressure cuff in a similar manner.  He also stated that he had never seen a blood pressure cuff cause this type of injury.

**{¶ 19}** Upon review of the evidence presented, the court finds that plaintiff has failed to prove by a preponderance of the evidence that defendant was negligent or that defendant's care and treatment of plaintiff fell below the standard of care.

**{¶ 20}** Similarly, to the extent that Dr. Schlam was critical of defendant for failing to fully investigate the nature of plaintiff's injury, the court finds that plaintiff's injury was not caused by the failure to establish a definitive diagnosis.

**{¶ 21}** For the foregoing reasons, the court finds that plaintiff has failed to prove that defendants were negligent and, accordingly, judgment shall be rendered in favor of defendants.

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

IRENE LINDSEY

     Plaintiff

     v.

UNIVERSITY OF TOLEDO dba UNIVERSITY OF TOLEDO MEDICAL CENTER, et al.

     Defendants
     Case No. 2008-01243

Judge Clark B. Weaver Sr.

<u>JUDGMENT ENTRY</u>

This case was tried to the court on the issue of liability. The court has considered the evidence and, for the reasons set forth in the decision filed concurrently herewith, judgment is rendered in favor of defendants. Court costs are assessed against plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
CLARK B. WEAVER SR.
Judge

cc:


Anne B. Strait                              Mark A. Davis
Paula Luna Paoletti                         500 Madison Avenue, Suite 340
Assistant Attorneys General                 Toledo, Ohio 43604
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

SJM/cmd
Filed January 18, 2011
To S.C. reporter February 22, 2011