**[Cite as *Widok v. Estate of Wolf*, 2020-Ohio-5178.]**

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

GERALD A. WIDOK,                               :

    Plaintiff-Appellant,           :

                               No. 108717

    v.                                 :

ESTATE OF MARY WOLF, ET AL.,     :

    Defendants-Appellees.          :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN PART,
                 AND REMANDED
**RELEASED AND JOURNALIZED:** November 5, 2020

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-17-882667

---

### *Appearances:*

Michael P. Harvey Co., L.P.A., and Michael P. Harvey, *for appellant*.

Reminger Co., L.P.A., Adam M. Fried, and Timothy J. Gallagher, *for appellees* Betty Good, William Good, Albert Pickup Jr., Patrick Pickup, and the Estate of Mary Wolf.

Meyers Roman Friedberg & Lewis, L.P.A., and T. Kinsey McInturf, *for appellee* Joseph Scouloukas.

EILEEN T. GALLAGHER, A.J.:

{¶ 1} Plaintiff-appellant, Gerald A. Widok ("Widok"), appeals the trial court's decision granting summary judgment in favor of defendants-appellees, the Estate of Mary Wolf ("the Estate"), et al. Widok raises the following assignments of error for review:

1. The trial court erred as a matter of law in dismissing defendant Albert Pickup, Jr., Nettie Pickup, Betty Good, William Good, and Patrick Pickup [from] Counts one through eleven via Ohio Civ.R. 12(B)(6) on August 15, 2018.

2. The trial court erred as a matter of law in dismissing the Estate of Mary Wolf [from] Counts five, nine and eleven of plaintiff's amended complaint pursuant to Ohio Civ.R. 12(B)(6).

3. The trial court erred in dismissing defendant Joe Scouloukas from Counts five, nine and eleven of the Plaintiff's Amended Complaint pursuant to Ohio Civ.R. 12(B)(6) on August 15, 2018.

4. The trial court erred as a matter of law in construing Albert Pickup, Jr., Nettie Pickup, William Good, Betty Good and Patrick Pickup's motion to strike Counts twelve through fourteen of the amended complaint as a motion to dismiss and then granting the motion to dismiss on August 15, 2018.

5. The trial court erred as a matter of law in granting defendant Scouloukas's motion for summary judgment in its entirety on May 28, 2019.

6. The trial court erred as a matter of law in granting the defendant Estate of Mary Wolf's motion for summary judgment in its entirety on May 28, 2019.

7. The trial court erred as a matter of law in determining that the plaintiff failed to prove a material fact in dispute as to Count fourteen of the amended complaint entitled spoliation on May 28, 2019.

8. The trial court erred as a matter of law in determining that spoliation could be dismissed pursuant to summary judgment as no genuine issues of material fact in dispute remained to be tried on May 28, 2019.

{¶ 2} After careful review of the record and relevant case law, we affirm in part, reverse in part, and remand for further proceedings on the remaining causes of action.

## I. Procedural and Factual History

{¶ 3} Widok and his wife, Frances Widok ("Frances"), were long-time friends with Joan Gullace ("Joan") and her husband, Ed Gullace ("Ed"). In the mid-1970s, Ed began experiencing severe pain that, according to Widok, caused Ed to contemplate suicide. (Amended complaint ¶ 16.) Widok testified that he convinced Ed to go to the hospital, where it was discovered that Ed was suffering from a "rare blood disease" that required immediate treatment. (Widok depo. vol. I., at 28-32.) When Ed was released from the hospital, he approached Widok and promised to leave Widok $15,000 in his will for saving his life. (*Id.*) When Ed died in June 2007, however, Widok did not receive $15,000, and Widok did not file a creditor's claim against Ed's estate.

{¶ 4} Following Ed's death, Widok and Frances continued their close relationship with Joan. Joan accompanied Widok and Frances on vacations, and when necessary, Widok assisted Joan with her day-to-day needs. Widok explained that he "assumed a responsibility [for Joan] as if she was [his] family" because he had promised Ed that he would look after Joan after Ed died. (*Id.* at 65.)

{¶ 5} Joan died in March 2016. Following her death, Widok held himself out to be the executor of her estate, and began to claim that he and his wife were beneficiaries of a last will and testament that Joan allegedly executed during her

lifetime. Widok could not recall any specific provisions of this will and admitted that he did not have a written agreement with Joan to be named as a beneficiary in her will. Nevertheless, Widok claimed that Joan "promised [him] $100,000 to take care of her estate." (Amended complaint ¶ 23.) At his deposition, however, Widok admitted that Joan did not expressly state that she would give him $100,000 in her will. (Widok depo. vol. I., at 81.) Rather, Joan stated that Widok and Frances "would be pleasantly surprised" when she passed away. (Widok depo. vol. I., at. 64, 81; Frances Widok depo. at 17.) Frances testified that she believed Joan intended "to take care of us when she died and leave us some of her money." (Frances depo. at 21.) However, Joan "never put a [dollar] figure on it." (Widok depo. vol. I., at 82).

{¶ 6} During their friendship with the Gullaces, Widok and Frances were introduced to Joan's sister, Mary Wolf ("Mary"). When Joan passed away, "[Widok] checked on Mary every morning either by phone or personal visit." (Amended complaint at ¶ 54.) Widok alleged that "Mary relied on [him] for pretty much everything, from taking care of utilities and payments to running around taking care of errands." (*Id.* at ¶ 55.) Widok described his relationship with Mary as a "pretty good" friendship, particularly after Joan passed away. (Widok depo. vol. I., at 135-136.) In contrast, Mary's personal attorney, Anthony Amato ("Amato"), described Widok's relationship with Mary as manipulative. (Anthony Amato depo. at 36.) In addition, Mary's financial advisor, Joe Scouloukas ("Scouloukas"), her niece-in-law, Betty Good ("Betty"), and her sister-in-law, Nettie Pickup ("Nettie"), each expressed that they did not know Widok to spend any time with Mary until after Joan passed

away. (Joe Scouloukas depo. at 24; Betty Good depo. at 30-31; Nettie Pickup depo. at 62.)

{¶ 7} Widok testified that he was aware that Joan kept her will inside a desk that was located in her kitchen. (Widok depo. vol. I., at 79.) He stated that only he and Mary knew where the will was located. (*Id.*) Following Joan's death, however, the will was no longer in Joan's desk. Thereafter, Widok began searching for Joan's will "in a lot of different places and didn't find it." (*Id.* at 88.) He searched bank security boxes and contacted various attorneys, including Amato, who may have assisted Joan in drafting her will. When his attempts proved unsuccessful, Widok did not file an application to admit a lost will and did not file a creditor's claim against Joan's estate.

{¶ 8} In the absence of a will, Joan died intestate. Mary was Joan's primary beneficiary and next of kin who inherited all of Joan's nonprobate assets. (Widok depo. vol. I., at 235; Scouloukas depo. at 15-16). Widok testified that Mary "knew [he] was looking for a copy of [Joan's] will." (*Id.* at 96-97.) According to Widok, Mary approached him and proposed "that if [he] stopped looking for the will, she would pay [him] the monies that Joan had promised [him]." (*Id.*) Widok explained that Mary made this proposal because she understood that Joan did not leave Mary "one penny" in her will. (*Id.* at 77.) Widok opined that "Mary was scared that [he] would come up with a copy of the will and she would lose her money." (*Id.* at 144.)

{¶ 9} Widok described Mary's promise as "an oral contract that he would stop looking for the will and she would pay all the monies Joan had promised." (*Id.* at

104.) Widok confirmed that he did not personally review Joan's will and did "not know what was in that will." (*Id.* at 98.) However, Widok expressed to Mary that he "would settle for $100,000 plus the $15,000 Ed had promised [him]," which Mary accepted. (*Id.* at 105-108.) According to Widok, Mary stated that she would pay him as soon as she sold Joan's home. (*Id.* at 108.) Widok estimated that he and Mary entered into the oral contract in "June or July 2016." (*Id.* at 97.) He later stated that the promise may have been made in October 2016. (*Id.* at 128.) Widok stated that he stopped looking for Joan's will based on Mary's promise. (*Id.* at 129.)

{¶ 10} Mary passed away in December 2016. Widok testified that Mary confessed to him on her death bed that she retrieved and destroyed Joan's will based on the advice of her financial advisor, Scouloukas. (Widok depo. vol. I., at 86, 96-97.)

{¶ 11} In the months before her death, Mary made approximately nine beneficiary designation changes to her nonprobate assets that were managed by defendant Scouloukas. (Scouloukas depo. at 49.) Widok was never added as a beneficiary to any of those accounts. (*Id.* at 50.) In addition, Mary never expressed a desire to make any gifts to Widok or to make him a beneficiary. (*Id.* at 103.) In November 2016, Mary executed a transfer on death designation affidavit, leaving Joan's house to defendants Albert Pickup, Jr. ("Albert"), William Good ("William"), and Patrick Pickup ("Patrick"). In December 2016, Mary executed her last will and testament, naming Albert, William, and Patrick as her beneficiaries. There was no provision for Widok in Mary's last will and testament.

{¶ 12} On June 7, 2017, Widok filed a claim to assets with the Cuyahoga County probate court, asserting a "claim to the Estate of Mary Wolf in the amount of $100,000 for services rendered and promises made to [Widok], together with all related expenses, interest, costs, fees and as well as a request for accounting by the Estate of monies it held on behalf of the Estate." The claim was also served on the Estate's executor, Amato, who rejected Widok's claim in a letter dated June 8, 2017.

{¶ 13} On July 6, 2017, Widok filed a complaint against the Estate in Cuyahoga C.P. No. CV-17-882667. The complaint set forth causes of action for (1) breach of oral contract, (2) breach of implied contract, (3) unjust enrichment, (4) quantum meruit, (5) accounting, (6) specific performance, (7) constructive trust, (8) breach of fiduciary duty, (9) reformation of will, (10) equitable estoppel, and (11) subrogation. The complaint sought

> at least $115,000.00 compensatory monies that he was promised for services rendered together with punitive damages as appropriate, incidental and consequential damages as appropriate, liquidated damages and statutory damages as appropriate, specific performance of his rights; accounting of Estate monies by an independent third party, a constructive trust, an injunction against release of any monies before full adjudication by this Court or jury and any appeals and any and all other relief including pre- and post-judgment interest to which he may be entitled and attorney fees.

{¶ 14} Following discovery, Widok filed an amended complaint. In addition to the eleven causes of action set forth in the original complaint, the amended complaint included claims for intentional interference with expectancy of inheritance, undue influence/fraud, and spoliation. The amended complaint also

named Albert, Patrick, Nettie, William, and Betty (together the "next of kin"), and Scouloukas as additional defendants.

{¶ 15} On January 19, 2018, the Estate moved to strike the three new claims and the six new parties included in the amended complaint. The Estate argued that the additional claims were "insufficient, impertinent, scandalous and brought in bad faith." Alternatively, the Estate moved to dismiss all counts of the amended complaint for failure to state claim upon which relief can be granted. The Estate asserted that the amended complaint "contains a hodgepodge of legally insufficient claims that are barred by statute, are barred because Plaintiff lacks standing, or are barred because this Court lacks jurisdiction."

{¶ 16} The trial court denied the motion to strike the amended complaint on February 27, 2018. On the same date, the next of kin filed a joint motion to join the Estate's Civ.R. 12(B)(6) motion to dismiss the amended complaint. Scouloukas filed a similar motion on March 12, 2018.

{¶ 17} On August 15, 2018, the trial court granted the next of kin's motion to dismiss Counts 1 through 14 of the amended complaint pursuant to Civ.R. 12(B)(6). In the same judgment entry, the trial court partially granted the Civ.R. 12(B)(6) motions filed by the Estate and Scouloukas, dismissing Counts 5, 9, and 11 of the amended complaint. However, the court determined that it was premature to dismiss the remaining counts against the Estate and Scouloukas.

{¶ 18} On January 31, 2019, the Estate file a motion for summary judgment, arguing Widok failed to establish the existence of a valid oral contract with Mary. In

support of its motion for summary judgment, the Estate attached (1) relevant probate records, (2) Mary's transfer on death designation affidavit, (3) Mary's last will and testament, and (4) the depositions of Valji Munjapara, M.D., Amato, Betty, Nettie, Scouloukas, Frances, and Widok.

{¶ 19} Widok filed a brief in opposition to summary judgment on April 1, 2019, arguing the Estate "failed to demonstrate that there are no genuine issues of material fact in dispute." Widok supported his opposition brief with an affidavit submitted by Frances, his own deposition testimony, and relevant portions of the depositions taken of Daniel Ripepi ("Ripepi"), Albert, Betty, William, and Amato.

{¶ 20} Scouloukas also filed a motion for summary judgment, asserting Widok's claims against him fail as a matter of law because (1) Widok has admitted under oath that Counts 1 through 13 are inapplicable to Scouloukas, and (2) there are no issues of fact pending regarding Widok's remaining spoliation claim against Scouloukas. Scouloukas supported his motion for summary judgment with his own deposition testimony, and the deposition testimony of Widok.

{¶ 21} Widok filed a brief in opposition, arguing that there remain genuine issues of material fact regarding his claims against Scouloukas. Widok supported his opposition brief with his own deposition testimony and relevant portions of the depositions taken of Ripepi, Albert, Betty, William, Amato, and Scouloukas.

{¶ 22} On May 28, 2019, the trial court granted summary judgment in favor of the Estate of Mary Wolf, stating, in relevant part:

Plaintiff alleges that Mary Wolf made an oral promise of money to him during her lifetime, to honor an oral promise of money made to him by her deceased sister, Ms. Gullace.

More specifically, Plaintiff claims that Ms. Wolf orally contracted with him to sell her recently deceased sister's house and pay plaintiff out of the proceeds of the sale if he agreed to stop looking for her sister's last will and testament.

* * *

The Court finds that plaintiff's claims as a creditor of the Estate of Mary Wolf are without merit. There is no genuine issue of material fact as to Counts one through four, six, seven, eight, ten, and twelve. (Counts five, nine, and eleven were previously dismissed by the court). As such, Defendant Estate of Mary Wolf is entitled to judgment as a matter of law.

The alleged contract between Mary Wolf and the Plaintiff was never reduced to writing and Ms. Wolf had every opportunity to provide for the Plaintiff by designating him as a beneficiary to any of her non-probate accounts, or by providing for him in her last will and testament. Ms. Wolf made no provision for the Plaintiff in her estate plan. The Plaintiff has presented virtually no evidence or documentation to support the alleged oral promise. Furthermore, oral contracts pertaining to the sale of real property and oral promises to answer for the debt of another are barred by the statute of frauds. *See* R.C. 1335.05. Based upon the foregoing, Defendant's motion for summary judgment is granted. The Court finds that Defendant Estate of Mary Wolf is entitled to judgment as a matter of law and finds that all of the Plaintiff's claims are without merit.

{¶ 23} In a separate journal entry, the trial court granted summary judgment in favor of Scouloukas, stating, in relevant part:

There is no genuine issue of material fact as to Counts one, two, three, four, six, seven, eight, ten, eleven, twelve, thirteen, and fourteen (Counts five, nine, and eleven were previously dismissed by the Court). As such, Defendant Scouloukas is entitled to judgment as a matter of law.

* * *

Plaintiff has failed to meet his burden in establishing any of the required elements of his spoliation of evidence claim.

A spoliation claim cannot be based upon conjecture that evidence might have existed and that a party might have destroyed it. *Scheel v. Rock Ohio Caesars Cleveland L.L.C.*, 2018-Ohio-3568, 108 N.E.3d 1252, paragraph one (8th Dist.). Defendant Scouloukas testified that he was uncertain if he actually recorded the meeting, or inadvertently deleted it or recorded over it.

Plaintiff specifically alleges that "the recorded but deleted or written over information could have been Mary's admission of what she told Jerry on her death bed * * *."

Even if the court assumes the recording did in fact exist, Plaintiff has failed to provide any evidence to show that it would have contained information supportive of his claim, or that defendant Scouloukas willfully destroyed the recording to interfere with Plaintiff's case.

With regard to Counts ten, twelve, and thirteen, the Court finds there is no genuine issue of material fact, and as such, the defendant is entitled to judgment as a matter of law.

Defendant Scouloukas is not directly connected to the estate, and there is no indication that he ever stood to benefit or sought to recover from the Estate. It is undisputed that Defendant Scouloukas handled the non-probate assets of Ms. Wolf. He testified that he never dealt with, or saw, any written will for Ms. Wolf or Ms. Gullace. Plaintiff has not presented any evidence to indicate that any of the non-probate assets managed by Defendant Scouloukas were transferred inappropriately or out of accordance with Ms. Wolf's wishes. Further, Plaintiff has acknowledged that he was not entitled to any of the non-probate assets of Ms. Wolf. He has failed to demonstrate a statement or representation made by Defendant Scouloukas, to Plaintiff, which he relied upon. Accordingly, Plaintiff's equitable estoppel claim fails.

Lastly, Plaintiff has failed to show that defendant Scouloukas either interfered with any expectance of inheritance or asserted any undue influence on Ms. Wolf.

{¶ 24} Widok now appeals from the trial court's judgment.

## II. Law and Analysis

### A. Civ.R. 12(B)(6)

{¶ 25} Widok's first, second, third, and fourth assignments of error challenge the trial court's dismissal of certain claims against the appellees pursuant to Civ.R. 12(B)(6).

{¶ 26} A Civ.R. 12(B)(6) motion to dismiss for failure to state a claim assesses the sufficiency of the complaint. *Vetor v. Cliffs Natural Resources, Inc.*, 8th Dist. Cuyahoga No. 104023, 2016-Ohio-5846, ¶ 8, citing *Assn. for the Defense of Washington Local School Dist. v. Kiger*, 42 Ohio St.3d 116, 537 N.E.2d 1292 (1989). A trial court's review of a Civ.R. 12(B)(6) motion to dismiss is limited to the four corners of the complaint along with any documents properly attached to or incorporated within the complaint. *Glazer v. Chase Home Fin. L.L.C.*, 8th Dist. Cuyahoga Nos. 99875 and 99736, 2013-Ohio-5589, ¶ 38.

{¶ 27} It is a longstanding principle that a plaintiff is not required to provide his or her case within the complaint at the pleading stage. *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 144-145, 573 N.E.2d 1063 (1991). "Consequently, as long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss." *Id.*

{¶ 28} In our review of a Civ.R. 12(B)(6) motion to dismiss, we must accept the material allegations of the complaint as true and make all reasonable inferences in favor of the plaintiff. *Jenkins v. Cleveland*, 8th Dist. Cuyahoga No. 104768, 2017-

Ohio-1054, ¶ 8, citing *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791, ¶ 6. "'Furthermore, we must undertake an independent analysis without deference to the lower court's decision.'" *Id.*, quoting *Hendrickson v. Haven Place, Inc.*, 8th Dist. Cuyahoga No. 100816, 2014-Ohio-3726, ¶ 12. For a party to ultimately prevail on the motion, it must appear from the face of the complaint that the plaintiff can prove no set of facts that would justify a trial court granting relief. *Id.*, citing *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 245, 327 N.E.2d 753 (1975).

### 1. Dismissal of Counts 5, 9, and 11 against the Estate and Scouloukas

{¶ 29} In his second assignment of error, Widok argues the trial court erred in dismissing Counts 5, 9, and 11 of the amended complaint against the Estate pursuant to Civ.R. 12(B)(6). In his third assignment of error, Widok argues the trial court erred in dismissing Counts 5, 9, and 11 of the amended complaint against Scouloukas pursuant to Civ.R. 12(B)(6). Widok makes no specific arguments in support of these claims, but broadly asserts that the trial court "misapplied Civ.R. 12(B)(6)." We address each claim separately.

### a. Count 5 — Accounting

{¶ 30} Count 5 of the amended complaint demanded:

an accounting of all of Mary Wolf's Estate including where the money came from, what monies are in the Estate, what monies have been paid by the Estate, what monies are not in the Estate and who holds them, and under what conditions and when those conditions occurred for the benefit of all, including Mr. Widok.

{¶ 31} Pursuant to R.C. 2101.24(A)(1)(c) and 2101.24(A)(1)(m), the probate court has exclusive jurisdiction to direct and control the conduct and settle the accounts of executors and administrators. *Fetters v. Duff*, 3d Dist. Mercer No. 10-17-14, 2018-Ohio-542, ¶ 17. Widok has presented no arguments, and has cited no legal authority, concerning the jurisdiction of the trial court to order an accounting of the Estate. It is not this court's duty to find and articulate legal authority to support Widok's assigned error. *See Inner City Living, Inc. v. Ohio Dept. of Dev. Disabilities*, 2017-Ohio-8317, 87 N.E.3d 253, ¶ 16 (8th Dist.). Accordingly, we find the trial court did not err in dismissing Count 5 of the amended complaint.

### b. Reformation of Mary's Last Will and Testament

{¶ 32} In Count 9 of the amended complaint, Widok asked the trial court

> for rectification or reformation of all the documents filed allegedly or purportedly permitting [the beneficiaries of Mary's last will and testament] to recover monies and instead insert Mr. Widok's claims as if they were there to begin with * * * in an amount to be determined by the court and/or the jury.

{¶ 33} "'[R]eformation' is defined as the remedy afforded by courts possessing equitable jurisdiction to the parties * * * to written instruments, which import a legal obligation, to reform or rectify such instruments whenever they fail, through fraud or mutual mistake, to express the real agreement or intention of the parties." *Lukacevic v. Daniels*, 8th Dist. Cuyahoga No. 107002, 2019-Ohio-102, ¶ 23, quoting *Greenfield v. Aetna Cas. & Sur. Co.*, 75 Ohio App. 122, 127-128, 61 N.E.2d 226 (12th Dist.1944). Relevant to the intention of Mary in this case, however, R.C. 2101.24(A)(1)(k) states that the probate court has exclusive jurisdiction to

construe wills.  Moreover, Widok failed to present any evidence to create an issue of fact as to whether Mary intended to provide for him in her last will and testament. Under these circumstances, we find the court did not err in dismissing Widok's claim for reformation of Mary's will.

### c. Subrogation

{¶ 34} In Count 11 of the amended complaint, Widok filed an action for subrogation, seeking "subrogation rights in the full extent of his claims for earned but unpaid monies going back several years on behalf of Mary Wolf and Joan Gullace."

{¶ 35} Subrogation is defined as

> 1.  The substitution of one party for another whose debt the party pays, entitling the paying party to rights, remedies, or securities that would otherwise belong to the debtor.  * * *  2.  The principle under which an insurer that has paid a loss under an insurance policy is entitled to all the rights and remedies belonging to the insured against a third party with respect to any loss covered by the policy.

*Black's Law Dictionary* 684-685 (3d Ed.2006).

{¶ 36} In this case, the amended complaint does not contain any allegations that Widok is entitled to the rights, remedies, or securities owed to another based on his payment of another's debt.  Accordingly, we find the trial court did not err in dismissing Count 11 for failure to state a claim.

{¶ 37} Widok's second and third assignments of error are overruled.

### 2.  Dismissal of Claims against the Next of Kin

{¶ 38} In his first assignment of error, Widok argues the trial court erred as a matter of law in dismissing Counts 1 through 11 against the next of kin pursuant to

Civ.R. 12(B)(6). In his fourth assignment of error, Widok argues the trial court erred as a matter of law in construing the next of kin's motion to strike Counts 12 through 14 as a motion to dismiss pursuant to Civ.R. 12(B)(6), and then granting the motion to dismiss. Again, Widok makes no specific arguments in support of his claims against the next of kin, but broadly asserts that the trial court "misapplied Civ.R. 12(B)(6)." We are unpersuaded by Widok's position.

{¶ 39} For the reasons previously discussed, we find the trial court did not err by dismissing Counts 5, 9, and 11 of the amended complaint against the next of kin. The remaining counts of the amended complaint are predicated on alleged promises made by Joan, Ed, and Mary during their lifetimes. Unquestionably, however, the next of kin were not parties to these alleged promises, nor has Widok alleged that he conferred a benefit upon the next of kin. Moreover, Widok has cited no evidence to suggest the next of kin owed Widok a fiduciary duty, exercised undue influence over Mary, or otherwise interfered with Widok's expectancy of inheritance. The next of kin were merely beneficiaries of the Estate, and are not personally liable for any claims pursued by Widok.

{¶ 40} Based on the foregoing, we find the trial court did not err in dismissing each of Widok's claims against the next of kin pursuant to Civ.R. 12(B)(6). Moreover, Widok has cited no legal authority to support his contention that the trial court erred by construing the next of kin's motion to strike as a motion to dismiss. App.R. 16(A)(7). Although the motion requested the trial court to strike the amended complaint pursuant to Civ.R. 12(F), it alternatively sought dismissal of

all counts pursuant to Civ.R. 12(B)(6) for failure to state claim upon which relief can be granted. The trial court did not commit reversible err by affording the next of kin relief pursuant to Civ.R. 12(B)(6).

{¶ 41} Widok's first and fourth assignments of error are overruled.

## B. Civ.R. 56(C)

{¶ 42} Widok's fifth, sixth, seventh, and eighth assignments of error challenge the trial court's judgment granting summary judgment in favor of the Estate and Scouloukas.

{¶ 43} We review an appeal from summary judgment under a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996); *Zemcik v. LaPine Truck Sales & Equip. Co.*, 124 Ohio App.3d 581, 585, 706 N.E.2d 860 (8th Dist.1998).

{¶ 44} Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Horton v. Harwick Chem. Corp.*, 73 Ohio St.3d 679, 653 N.E.2d 1196 (1995), paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996).

**{¶ 45}** Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E); *Mootispaw v. Eckstein*, 76 Ohio St.3d 383, 385, 667 N.E.2d 1197 (1996). Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359, 604 N.E.2d 138 (1992).

**{¶ 46}** With this standard in mind, we address the remaining claims pursued against the Estate and Scouloukas.

### 1. The Estate's Motion for Summary Judgment

### a. Count 1 — Breach of Oral Contract

**{¶ 47}** Count 1 of the amended complaint set forth a claim for breach of oral contract, alleging that the defendants failed to fulfill oral promises made by Mary, Joan, and Ed "to compensate [Widok] for the time and effort and work that he put in on their behalf over the years and emergencies."

**{¶ 48}** Before addressing the merits of Widok's claim, we note that the Joan and Ed, now deceased, are not parties to this case. Widok made no claims against the Gullaces or their estates following their deaths, despite his testimony that they each made monetary promises to him during their lifetimes. We decline to assess Widok's breach of contract claim to the extent it relies on promises of nonparties.

**{¶ 49}** Regarding Mary, the record is devoid of any oral promises to compensate Widok for the services he provided Mary during her lifetime. In fact,

Widok testified that he never entered into a contract, oral or otherwise, to provide Mary services during her lifetime in exchange for money. (Widok depo. vol. I., at 146.) Rather, Widok's breach of contract claim against Mary relies on her alleged promise to pay Widok the money Joan had promised him if he promised to stop looking for a copy Joan's missing will. Specifically, Widok testified that Mary promised to pay him $115,000 out of the proceeds of the sale of Joan's house, stating:

> So basically the oral agreement was $100,000 plus the [$15,000] for Ed. All right? And that was it. And that included everything.

(*Id.* at 147.) Widok estimated that the oral agreement was made in June or July 2016. However, he later testified that the agreement may have been made in October 2016. Widok testified that Mary later admitted that she had taken Joan's will. (*Id* at 125.) Widok explained that Mary further confessed

> that she destroyed Joan's will because she was not a named beneficiary under the instrument and feared losing a substantial amount of money she inherited from Joan.

(*Id.* at 125, 213.)

{¶ 50} In its motion for summary judgment, the Estate argued that it was entitled to judgment as a matter of law because, "other than [Widok's] bare assertions, there are no facts in support of the existence of any oral contract." Alternatively, the Estate argued that the alleged oral contract was barred by the statute of frauds because it was not reduced to writing, concerned an agreement to answer for the debt of another, and involved the sale of real property.

{¶ 51} The trial court agreed, finding (1) Widok presented virtually no evidence or documentation to support the alleged oral promise, and (2) oral contracts pertaining to the sale of real property and oral promises to answer for the debt of another are barred by the statute of frauds pursuant to R.C. 1335.05.

{¶ 52} Contract formation requires an offer, acceptance, consideration, and mutual assent between two or more parties with the legal capacity to act. *See, e.g., Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16, quoting *Perlmuter Printing Co. v. Strome, Inc.*, 436 F.Supp. 409, 414 (N.D.Ohio 1976) ("A contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration."); *Rulli v. Fan Co.*, 79 Ohio St.3d 374, 376, 683 N.E.2d 337 (1997). For a contract to be enforceable, there must be a "meeting of the minds" as to the essential terms of the agreement, i.e., the essential terms of the agreement must be "'reasonably certain and clear'" and mutually understood by the parties. *Kostelnik* at ¶ 16-17, quoting *Rulli* at 376; *see also Episcopal Retirement Homes v. Ohio Dept. of Indus. Relations*, 61 Ohio St.3d 366, 369, 575 N.E.2d 134 (1991) (To "declare the existence of a contract," both parties must consent to its terms, there must be a meeting of the minds of both parties and the contract must be "definite and certain.").

{¶ 53} An oral agreement is enforceable when the terms of the agreement are sufficiently particular. The terms of an oral contract may be determined from

"'words, deeds, acts, and silence of the parties.'" *Kostelnik* at ¶ 15, quoting *Rutledge v. Hoffman*, 81 Ohio App. 85, 75 N.E.2d 608 (12th Dist.1947).

{¶ 54} Ohio courts have held that "[t]he burden of proof on one seeking to enforce an oral contract requires that party to prove the existence of the contract by clear and convincing evidence." *Bumgarner v. Bumgarner*, 4th Dist. Highland No. 09CA22, 2010-Ohio-1894, ¶ 20, citing *Nofzinger v. Blood*, 6th Dist. Huron No. H-02-014, 2003-Ohio-1406, ¶ 53. "'Clear and convincing evidence' is evidence that will produce in the fact-finder's mind a firm belief or conviction as to the facts sought to be established." *Id.* Ohio applies this heightened burden because oral contracts are disfavored. *Busch Bros. Elevator Co. v. Unit Bldg. Servs.*, 190 Ohio App.3d 413, 2010-Ohio-5320, 942 N.E.2d 404, ¶ 6 (1st Dist.), citing *Kostelnik,* 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, at ¶ 15.

### i. Meeting of the Minds

{¶ 55} On appeal, the Estate reiterates its position that "Widok failed to establish all of the necessary elements of an oral contract." Initially, the Estate contends that Mary's words, deeds, acts, and silence in the months following her alleged conversation with Widok demonstrate that there was no meeting of the minds between Mary and Widok sufficient to establish an enforceable contract.

{¶ 56} "'Meeting of the minds' refers to the manifestation of mutual assent by the parties of an agreement to the exchange and consideration, or to the offer and acceptance." *Tiffe v. Groenenstein*, 8th Dist. Cuyahoga No. 80668, 2003-Ohio-1335, ¶ 25, citing 1 Restatement of the Law 2d, Contracts, Section 17, Comment c

(1981).  To have a meeting of the minds, "'there must be a definite offer on one side and an acceptance on the other.'" *Turoczy Bonding Co. v. Mitchell,* 2018-Ohio-3173, 118 N.E.3d 439, ¶ 18 (8th Dist.), quoting *Garrison v. Daytonian Hotel*, 105 Ohio App.3d 322, 325, 663 N.E.2d 1316 (2d Dist.1995).  Furthermore, "[t]he relevant inquiry is the manifestation of intent of the parties as seen through the eyes of a reasonable observer, rather than the subjective intention of the parties."  *Bennett v. Heidinger*, 30 Ohio App.3d 267, 268, 507 N.E.2d 1162 (8th Dist.1986).

{¶ 57} In this case, the Estate's motion for summary judgment attached the transfer of death designation affidavit that was executed by Mary on November 14, 2016.  In relevant part, the affidavit reflects that, upon her death, Mary intended to transfer her property interest in Joan's home to Patrick, Albert, and William.  The affidavit contains no provision for Widok.  In addition, the Estate attached Mary's last will and testament, which was finalized after Mary's promise was made to Widok.  Again, the instrument contains no provision for Widok that would support the existence of the alleged contract.  Finally, the Estate attached the deposition testimony of various individuals, including Mary's attorney, Amato, and her financial advisor, Scouloukas.  Despite their active involvement in settling Mary's affairs in the months leading to her death, both Amato and Scouloukas testified that Mary never expressed an intention to leave Widok a gift or payment.  Amato testified that Mary had spoken to him about Widok asking her for money based on promises made to him by Joan.  (Amato depo. at 30.)  However, Amato reiterated that Mary expressed to him that she did not feel obligated to compensate Widok for any

promises that may have been made by her sister.  (*Id.* at 32.)  And, although Widok actively interacted with Amato and Scouloukas while they attempted to organize Mary's assets, the record is devoid of any indication that Widok ever referenced his oral contract with Mary.

{¶ 58} In his opposition to the Estate's motion for summary judgment, Widok submitted select portions of several depositions and the affidavit submitted by his wife, Frances.  In addition to his own testimony concerning the nature and terms of the alleged agreement with Mary, Widok relied extensively on the testimony of funeral director, Ripepi, who handled Joan and Mary's funeral arrangements.  In relevant part, Ripepi testified that Mary expressed to him that she "wanted Widok to receive a portion of her estate" because Widok "[had] been helping her out."  (Ripepi depo. at 23-24.)  While Ripepi made no statement to indicate he was aware of an oral contract entered into between Mary and Widok, his testimony does reflect that, at some point, Mary contemplated naming Widok as a beneficiary of her estate.  Similarly, although Frances had no knowledge of the specific nature of the oral contract allegedly entered into between her husband and Mary, she averred that Widok told her that Mary intended to honor Joan's previous promises to provide for Widok in her will.

{¶ 59} In assessing the Estate's characterization of Widok's evidence, we note that:

> In summary judgment proceedings, a court may not weigh the evidence or judge the credibility of sworn statements, properly filed in support of or in opposition to a summary judgment motion, and must construe

the evidence in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). * * * When trial courts choose between competing affidavits and testimony, they improperly determine credibility and weigh evidence contrary to summary judgment standards. *Finn v. Nationwide Agribusiness Ins. Co.*, 3d Dist. Allen No. 1-02-80, 2003-Ohio-4233, ¶ 39.

*Telecom Acquisition Corp. I. v. Lucic Ents.*, 2016-Ohio-1466, 62 N.E.3d 1034, ¶ 93

(8th Dist.).

**{¶ 60}** Further, as the Ohio Supreme Court recognized:

[c]redibility issues typically arise in summary judgment proceedings when one litigant's statement conflicts with another litigant's statement over a fact to be proved. Since resolution of the factual dispute will depend, at least in part, upon the credibility of the parties or their witnesses, summary judgment in such a case is inappropriate.

*Turner v. Turner*, 67 Ohio St.3d 337, 341, 617 N.E.2d 1123 (1993).

**{¶ 61}** Consistent with these principles, this court has stated that "whether a meeting of the minds has been obtained is a question of fact to be determined by the trier of fact from all the relevant facts and circumstances." *Gutbrod v. Schuler*, 8th Dist. Cuyahoga No. 94228, 2010-Ohio-3731, ¶ 17, citing *Garrison*, 105 Ohio App.3d at 325, 663 N.E.2d 1316 (2d Dist.1995). *See also Oglebay Norton Co. v. Armco, Inc.*, 52 Ohio St.3d 232, 235, 556 N.E.2d 515 (1990) ("whether the parties intended to be bound * * * is a question of fact properly resolved by the trier of fact."). We recognize that Mary's actions prior to her death were not consistent with one who had manifested the intent to compensate Widok in exchange for his promise to end his search for Joan's missing will. However, in addition to his own accounts of the alleged promise, Widok has presented outside evidence that corroborates his

contention that, although nothing was reduced to writing, Mary had expressed an intention to compensate Widok. Without assessing the credibility of Widok's claim in this case, we find that genuine issues of material fact exist as to the existence of the alleged agreement, and whether there was a meeting of the minds to support an enforceable contract.

### ii. Consideration

{¶ 62} The Estate further contends that "the facts show there was no valid consideration." Specifically, the Estate suggests that "if the object of the contract — the will — was previously destroyed and did not exist, then there could be no benefit or detriment to Mary or Jerry, for that matter, by [Widok] ceasing his efforts to look for it." Thus, the Estate characterizes the alleged contract as being "no more than a gratuitous promise."

{¶ 63} Consideration may consist of either a detriment to the promisee or a benefit to the promisor. *Irwin v. Lombard Univ.*, 56 Ohio St. 9, 19, 46 N.E. 63 (1897). A benefit may consist of some right, interest, or profit accruing to the promisor, while a detriment may consist of some forbearance, loss, or responsibility given, suffered, or undertaken by the promisee. *Id.* at 20. There is, therefore, consideration on the part of the promisee who refrains from doing anything that he or she has the right to do whether or not there is any actual benefit to the promisor. *Harvest Land Co-Op, Inc. v. Hora*, 2d Dist. Montgomery No. 25068, 2012-Ohio-5915, ¶ 16, citing *Gruber v. Chesapeake & Ohio R. Co.*, 158 F.Supp. 593 (N.D.Ohio 1957).

**{¶ 64}** Generally, courts may not inquire into the adequacy of consideration, which is left to the parties as "the sole judges of the benefits or advantages to be derived from their contracts." *Hotels Statler Co., Inc. v. Safier*, 103 Ohio St. 638, 644-645, 134 N.E. 460 (1921). But whether there is consideration at all is a proper question for a court. *Williams v. Ormsby*, 131 Ohio St.3d 427, 2012-Ohio-690, 966 N.E.2d 255, ¶ 17,

> Gratuitous promises are not enforceable as contracts, because there is no consideration. * * * A written gratuitous promise, even if it evidences an intent by the promisor to be bound, is not a contract. * * * Likewise, conditional gratuitous promises, which require the promisee to do something before the promised act or omission will take place, are not enforceable as contracts. * * * While it is true, therefore, that courts generally do not inquire into the adequacy of consideration once it is found to exist, it must be determined in a contract case whether any "consideration" was really bargained for. If it was not bargained for, it could not support a contract.

*Id.*, quoting *Carlisle v. T & R Excavating, Inc.*, 123 Ohio App.3d 277, 283-284, 704 N.E.2d 39 (9th Dist.1997).

**{¶ 65}** After careful review, we find there remain genuine issues of facts as to whether the alleged contract, if its existence is proven, contained bargained for consideration, consisting of a benefit to Mary and a detriment to Widok. The evidence, construed in Widok's favor, demonstrates that Widok believed that Joan created a will prior to her death and that he was to serve as the executor of Joan's estate. Widok had the right to search for Joan's missing will. And, by agreeing to pay Widok $115,000, Mary induced Widok to refrain from his pursuit, thereby causing him to suffer a detriment. In turn, if a trier of fact deems Widok's evidence

credible, Widok's detriment conferred a benefit on Mary, who was allegedly not a named beneficiary under Joan's will. The Estate's suggestion that there was no consideration based on Mary's alleged destruction of Joan's will is unpersuasive, since it requires this court to speculate about the exact time the will was allegedly destroyed and that there were no other copies of the will that could have been recovered and submitted to the probate court by Widok.

### iii.  Statute of Frauds

{¶ 66} Finally, the Estate argues "the statute of frauds bars enforcement of the types of oral contracts that [Widok] seeks to enforce." The Estate contends that, in the absence of a written agreement, "the statute of frauds expressly forbids the enforcement of a promise to answer for the debt of another, and the promise to sell land or any interest in the sale of land."

{¶ 67} The statute of frauds is set forth in R.C. 1335.05 and provides, in relevant part:

> No action shall be brought whereby to charge the defendant, upon a special promise, to answer for the debt, default, or miscarriage of another person; * * * or upon a contract or sale of lands * * *unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized.

{¶ 68} Contrary to the trial court's determination, Mary's promise to pay Widok $115,000 in exchange for his promise to stop searching for Joan's lost will did not constitute a contract for the sale of lands. While Mary expressed that she would pay Widok once she sold Joan's home, the sale of the property was not part

of the bargained-for exchange. Accordingly, we find the trial court's reliance on R.C. 1335.05 to be misplaced in this regard.

{¶ 69} With respect to the Estate's position, and the trial court's determination that Mary's alleged promise to Widok constituted a special promise to answer for the debt of another, we are cognizant that:

> "When the leading objection of the promisor is not to answer for another's debt but to subserve some pecuniary or business purpose of his own involving a benefit to himself, his promise is not within the statute of frauds ***." *See Wilson Floors Co. v. Sciota Park, Ltd.*, 54 Ohio St.2d 451, 377 N.E.2d 514, syllabus (1978).

*Berry v. Lupica*, 196 Ohio App.3d 687, 2011-Ohio-5381, 965 N.E.2d 318, ¶ 12 (8th Dist.).

{¶ 70} Construing the evidence in favor of Widok, it is evident that the leading object of Mary's alleged promise was not to answer for Joan's past promises, but to further her own pecuniary interests. Widok provided extensive testimony regarding Joan's intention to exclude Mary from her will, which, allegedly, prompted Mary to retrieve and destroy Joan's will while Joan was in hospice. According to Widok, Mary received a significant windfall by preventing the recovery of Joan's will because she was Joan's only living heir. Having found that genuine issues of material fact remain as to the existence of the oral contract, we find the terms of the agreement, if proven, circumvent the statute of frauds provision for an oral contract to guarantee the debt of another.

{¶ 71} Based on the foregoing, we find there are genuine issues of material fact regarding whether Widok and Mary entered into an enforceable oral contract.

Accordingly, the trial court erred by granting summary judgment in favor of the Estate on Count 1 of the amended complaint. Our conclusion does not rest on the strength or credibility of Widok's evidence, but is premised on the well-established principle that ""the purpose of summary judgment is not to try issues of fact, but rather to determine whether triable issues of fact exist."" *Gutbrod*, 8th Dist. Cuyahoga No. 94228, 2010-Ohio-3731, at ¶ 7, quoting *McCarthy, Lebit, Crystal & Haiman Co., L.P.A. v. First Union Mgt., Inc.*, 87 Ohio App.3d 613, 619, 622 N.E.2d 1093 (8th Dist.1993), quoting *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 15, 467 N.E.2d 1378 (6th Dist.1983).

### b. Counts 2, 3, and 4 — Breach of Implied Contract, Unjust Enrichment, and Quantum Meruit

{¶ 72} Count two of the amended complaint set forth a claim for breach of implied contract, alleging, in relevant part:

> Over the years, Jerry, Mary, Ed, and Joan had a very close, personal and connected relationship of trust and repose. Growing out of this relationship were promises that were based upon the understanding that Widok would be compensated for time, effort, expertise and experience in helping these folks, particularly after Ed passed away.
>
> The relationship of the parties, the promises made and the work that was done and accepted by Ed, Joan, and Mary give rise to implied contracts which apparently the Estate has determined not to honor.

{¶ 73} Relatedly, Counts 3 and 4 of the amended complaint set forth claims for unjust enrichment and quantum meruit. Each count contains identical language, alleging that "Mary Wolf and her family" were unjustly enriched because they were not required to pay "nurses and personal assistance" for the "untold

amount of work [and services]" Widok provided for Mary. The amended complaint expressed that "Mary relied on Jerry Widok for pretty much everything from taking care of utilities and payments to running around taking care of errands, and he did for Mary as he did for Joan."

> [I]t is well-established that there are three classes of simple contracts: express, implied in fact, and implied in law. *Hummel v. Hummel*, 133 Ohio St. 520, 525, 14 N.E.2d 923 (1938); *Rice v. Wheeling Dollar Savings & Trust*, 155 Ohio St. 391, 99 N.E.2d 301 (1951). "In express contracts the assent to its terms is actually expressed in offer and acceptance. In contract implied in fact the meeting of the minds, manifested in express contracts by offer and acceptance, is shown by the surrounding circumstances which made it inferable that the contract exists as a matter of tacit understanding. In contracts implied in law there is no meeting of the minds, but civil liability arises out of the obligation cast by law upon a person in receipt of benefits which he is not justly entitled to retain and for which he may be made to respond to another in an action in the nature of assumpsit. Contracts implied in law are not true contracts; the relationship springing therefrom is not in a strict sense contractual but quasi-contractual or constructively contractual. In truth contracts implied in law are often called quasi contracts or constructive contracts. *Columbus, Hocking Valley & Toledo Ry. Co. v. Gaffney*, 65 Ohio St. 104, 61 N.E. 152 (1901)."

*Legros v. Tarr*, 44 Ohio St.3d 1, 6-7, 540 N.E.2d 257 (1989). A contract implied in law, or a quasi-contract, "does not rest upon the intention of the parties, but rather on equitable principles, in order to provide a remedy." *Paugh & Farmer, Inc. v. Menorah Home for Jewish Aged*, 15 Ohio St.3d 44, 46, 472 N.E.2d 704 (1984).

{¶ 74} Ohio Courts have recognized that the concepts of quasi-contract, unjust enrichment, and quantum meruit are interrelated. A claim for unjust enrichment is an equitable claim based on a quasi-contract. *Padula v. Wagner*, 2015-Ohio-2374, 37 N.E.3d 799, ¶ 47 (9th Dist.). *See also Grothaus v. Warner*, 10th

Dist. Franklin No. 08AP-115, 2008-Ohio-6683, ¶ 8, citing *Hummel* at 525-528. "[U]njust enrichment of a person occurs when he has and retains money or benefits which in justice and equity belong to another." *Hummel* at 528. To prevail on a claim for unjust enrichment, a plaintiff must prove by a preponderance of the evidence that (1) the plaintiff conferred a benefit upon the defendant, (2) the defendant had knowledge of such benefit, and (3) the defendant retained that benefit under circumstances in which it would be unjust to do so without payment. *See Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791, ¶ 20, citing *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183, 465 N.E.2d 1298 (1984).

{¶ 75} Similarly, "quantum meruit is a doctrine derived from the natural law of equity, the basic concept of which is that no one should be unjustly enriched who benefits from the services of another. In order to prevent such an unjust enrichment, the law implied a promise to pay a reasonable amount for the services rendered [by another] * * *, in the absence of a specific contract." S*onkin & Melena Co., L.P.A. v. Zaransky*, 83 Ohio App.3d 169, 175, 614 N.E.2d 807 (8th Dist.1992). Though the elements of quantum meruit and unjust enrichment have been found to be identical, quantum meruit is a distinct claim or right of action. *A N Bros. Corp. v. Total Quality, L.L.C.*, 2016-Ohio-549, 59 N.E.3d 758, ¶ 42 (12th Dist.), citing *In re Suchodolski*, 9th Dist. Lorain No. 10CA009833, 2011-Ohio-6333, ¶ 8. The difference is the manner in which damages are computed.

{¶ 76} In this case, the allegations set forth in Counts 2, 3, and 4 of the amended complaint are not related to Mary's alleged promise to compensate Widok if he stopped searching for Joan's lost will. Rather, the claims rely exclusively on the day-to-day services Widok allegedly performed for Mary during her lifetime. As stated, Widok conceded during his deposition that he did not enter into an express agreement with Mary to provide her services in exchange for compensation. (Widok depo. vol. I., at. 146.) Thus, Widok's claims rely on the equitable principles of a quasi contract.

{¶ 77} As previously discussed, in a quasi-contract action, a plaintiff may, under certain circumstances, recover the value of services rendered for the benefit of a decedent during his or her lifetime. *See Motzer v. Estate of Carpenter*, 2d Dist. Montgomery No. 11869, 1990 Ohio App. LEXIS 2034, 4 (May 18, 1990); *Jankowski v. Key Trust Co.,* 6th Dist. Lucas No. L-00-1310, 2001 Ohio App. LEXIS 2538, 12 (June 8, 2001); *Barto v. Barto*, 11th Dist. Trumbull No. 91-T-4520, 1992 Ohio App. LEXIS 441, 5 (Feb. 7, 1992); *Thompson v. Thompson*, 5th Dist. Fairfield No. 25-CA-89, 1990 Ohio App. LEXIS 805, 3 (Mar. 2, 1990); *Hancock v. Williams*, 1st Dist. Warren Nos. 263 and 272, 1979 Ohio App. LEXIS 9864, 5 (Aug. 15, 1979). When the services are performed by one who is not a family member, the presumption is that the provision and acceptance of services gives rise to an obligation to pay regardless of the existence of a written contract. *See Motzer* at *id.*; *Estate of Combs*, 1st Dist. Hamilton No. C-961056, 1998 Ohio App. LEXIS 955, 3-4 (Mar. 13, 1998); *In re Guardianship of Hall*, 4th Dist. Lawrence No. 95CA16, 1996 Ohio App. LEXIS 1352,

7 (Mar. 26, 1996); *Spinks v. Carey*, 12th Dist. No. CA91-02-003, 1992 Ohio App. LEXIS 502 (Feb. 10, 1992); *In re Estate of Fleming*, 12th Dist. Clinton No. CA83-08-009, 1984 Ohio App. LEXIS 10062, 4 (June 25, 1984).  However

> [w]here it is shown, or admitted, that a party performing services, that should have been performed by another, had no intention at the time to claim compensation, and did not expect to receive any from the other, no recovery therefor can be had upon a quantum meruit against the party for whom the work was done.

*Gaffney*, 65 Ohio St.104, 61 N.E. 152, at paragraph two of the syllabus.  Generally, the question of whether the services were provided gratuitously is a question of fact. *Beckler v. Bacon*, 170 Ohio App.3d 612, 2007-Ohio-1319, 868 N.E.2d 716, ¶ 14 (1st Dist.).

{¶ 78} In this case, the evidence attached to Widok's opposition brief unquestionably demonstrates that Widok provided Mary various day-to-day services prior to her death.  For instance, the deposition testimony submitted by Widok establishes that Widok handled Mary's finances, paid bills on her behalf, accompanied her to appointments, and assisted her in day-to-day activities. Although the record reflects that Mary was weary of Widok's sudden involvement in her life, the evidence indicates that Mary understood and accepted Widok's services to her benefit.

{¶ 79} Regarding the expectations of the parties, there is no dispute that Widok is not a member of Mary's family.  And, when questioned by defense counsel about whether the services provided to Mary were gratuitous, Widok declined to answer following an objection by plaintiff's counsel.  (Widok depo. vol. I., at 149.)

There is no direct evidence to prove or disprove whether Widok had an expectation of compensation at the time he provided Mary services. Under these circumstances, we find there exists genuine issues of material fact as to whether Widok provided services to Mary gratuitously and, if not, the value of any services he provided for which he was not compensated. Accordingly, the trial court erred by granting summary judgment in favor of the Estate on Counts 2, 3, and 4 of the amended complaint.

### c. Count 6 — Specific Performance

{¶ 80} Count 6 of the amended complaint set forth a claim for specific performance. In relevant part, Widok sought "the specific performance of the promises made by both Mary Wolf and her sister, Joan Gullace, and before that her husband, Ed Gullace now deceased." Widok reiterates that "Mary promised [him] that she would honor Joan's financial obligations as well as her own if he would stop looking for the will and that he would get the money owed to him when the house was sold."

{¶ 81} Ohio Jurisprudence describes the nature of specific performance as follows:

> Specific performance of contracts is an equitable remedy, and an action for specific performance is an equitable action. The remedy of specific performance of contracts is a well-recognized and important branch of jurisprudence but one that generally is available only to protect contract rights.

> The remedy of specific performance requires a part[y] to provide performance specifically as agreed. The purpose of the remedy is to give the one who seeks it the benefit of the contract in specie by compelling the other party to the contract to do that which was

agreed - to perform the contract on the precise terms agreed upon by the parties. Hence, a decree for specific performance is nothing more or less than a means of compelling a party to do precisely that which ought to have been done without the court's coercion.

* * *

Specific performance is not a remedy that may be sought on all contracts; ordinarily, where a contract is breached by one party, the other party is limited to an action for damages for breach; however, if such damages do not provide an adequate remedy, an action for specific performance may lie.

84 Ohio Jurisprudence 3d, Specific Performance, Section 1 (2016).

{¶ 82} As recognized by this court:

Specific performance is only available where there is no adequate remedy at law. *Gleason v. Gleason*, 64 Ohio App.3d 667, 672, 582 N.E.2d 657 (4th Dist.1991). Generally, specific performance will be denied unless there is evidence that money damages would be an inadequate remedy. *Id.*

*Midamco v. Sashko*, 8th Dist. Cuyahoga Nos. 96683 and 97180, 2012-Ohio-1189, ¶ 23.

{¶ 83} After careful consideration, we find the remedy of specific performance to be unnecessary under the circumstances presented in this case. While there remain genuine issues of material fact regarding the existence of an enforceable contract, Widok has not demonstrated that money damages would not afford him adequate relief for the loss arising from the breach. Accordingly, the trial court did not err by granting summary judgment in favor of the Estate on Count 6 of the amended complaint.

### d. Count 7 — Constructive Trust

{¶ 84} Count 7 of the amended complaint set forth a claim for constructive trust. Restating his position that he has been "wrongfully deprived of his rights to monies promised to him by both Mary and Joan," Widok asked the trial court to organize a constructive trust "for the benefit of Widok."

> A constructive trust is a "trust by operation of law which arises contrary to intention and in invitum, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy. It is raised by equity to satisfy the demands of justice." (Footnotes omitted.) *Ferguson v. Owens*, 9 Ohio St.3d 223, 225, 459 N.E.2d 1293 (1984), quoting 76 American Jurisprudence 2d, Trusts, Section 221 (1975). A constructive trust is considered a trust because "[w]hen property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee." *Id.* at 225, quoting *Beatty v. Guggenheim Exploration Co.*, 225 N.Y. 380, 386, 389, 122 N.E. 378 (1919).

*Estate of Cowling v. Estate of Cowling*, 109 Ohio St.3d 276, 2006-Ohio-2418, 847 N.E.2d 405, ¶ 18.

{¶ 85} It is evident that Widok's request for a constructive trust is predicated on his position that the beneficiaries of the Estate have received monetary payments that belong, in part, to Widok. However, as this court has previously explained:

> A constructive trust is a remedy, not a cause of action. "A constructive trust is, in the main, an appropriate remedy against unjust enrichment. This type of trust is usually invoked when property has been acquired by fraud" or the acquisition of property "is against the principles of equity." *Ferguson v. Owens*, 9 Ohio St.3d 223, 226, 459 N.E.2d 1293 (1984).

*Graham v. Lakewood*, 2018-Ohio-1850, 113 N.E.3d 44, ¶ 58 (8th Dist.). *See also Kostyo v. Kaminski*, 9th Dist. Lorain No. 12CA010266, 2013-Ohio-3188, ¶ 17 ("Generally speaking, however, there is no such thing as a cause of action for constructive trust.").

{¶ 86} Having determined the trial court committed reversible error by awarding the Estate summary judgment on the equitable claims set forth in Counts 2, 3, and 4 of the amended complaint, the remedy of a constructive trust may be available to Widok pending resolution of his remaining claims. *See Concepcion v. Concepcion*, 131 Ohio App.3d 271, 278, 722 N.E.2d 176 (3d Dist.1999) ("It is well established that where unjust enrichment is found, it may serve as a basis for the operation of a constructive trust."). At this time, however, because constructive trust is not an independent cause of action, we are unable to conclude the trial court erred by granting judgment in favor of the Estate on Count seven.

### e. Count 8— Breach of Fiduciary Duty

{¶ 87} Count 8 of the amended complaint set forth a claim for breach of fiduciary duty. In relevant part, Widok alleged that Mary owed him a fiduciary duty "to make sure that the path was clear for her or the Estate to honor the obligations that she made." Widok further alleged that "as a result of the breach of fiduciary duty, [he] was damaged in an amount to be determined at trial."

{¶ 88} To maintain a claim for breach of a fiduciary duty, the plaintiff must prove (1) the existence of a duty arising from a fiduciary relationship, (2) a failure to observe the duty, and (3) an injury proximately resulting from that failure. *Strock*

*v. Pressnell*, 38 Ohio St.3d 207, 216, 527 N.E.2d 1235 (1988); *Harwood v. Pappas & Assocs.*, 8th Dist. Cuyahoga No. 84761, 2005-Ohio-2442, ¶ 26.

> A fiduciary has been defined as a person having a duty, created by his or her undertaking, to act primarily for the benefit of another in matters connected with such undertaking. *Strock*, at 527. A claim of breach of fiduciary duty is basically a claim for negligence that involves a higher standard of care. *Id.*

*Star Land Title Agency, Inc. v. Surewin Invest., Inc.*, 8th Dist. Cuyahoga No. 87569, 2006-Ohio-5729, ¶ 36. "The burden of proving the existence of a fiduciary relationship is on the party asserting it." *RPM, Inc. v. Oatey Co.*, 9th Dist. Medina Nos. 3282-M and 3289-M, 2005-Ohio-1280, ¶ 20.

{¶ 89} "Whether or not a fiduciary relationship exists depends on the facts and circumstances of each case." *Horak v. Nationwide Ins. Co.*, 9th Dist. Summit No. 23327, 2007-Ohio-3744, ¶ 31. "[I]t is well settled that, the relationship of debtor and creditor, without more, is not a fiduciary relationship." *Stancik v. Deutsche Natl. Bank*, 8th Dist. Cuyahoga No. 102019, 2015-Ohio-2517, ¶ 49, citing *Blon v. Bank One, Akron, N.A.*, 35 Ohio St.3d 98, 519 N.E.2d 363 (1988). "A fiduciary duty may arise out of a contract or an informal relationship, however, where both parties to the transaction understand that a special trust of confidence has been reposed." *RPM* at ¶ 20. "Thus, a fiduciary relationship cannot be unilateral, but must be mutual." *Horak* at ¶ 32.

{¶ 90} In this case, the Estate presented substantial testimony regarding Mary's interactions with Widok and her interpretation of their relationship. The evidence demonstrates that Mary believed that she and Widok were acquaintances

based on their mutual relationships with Joan. Although Widok has raised issues of fact regarding Mary's monetary obligations, Widok did not produce evidence establishing that a mutual fiduciary relationship existed between him and Mary, as there was no evidence that Mary understood that Widok was placing a special trust or confidence in the relationship, or that Mary intended to act primarily for the benefit of Widok. Accordingly, we find Widok's claim for breach of fiduciary duty fails as a matter of law. The trial court did not err in granting summary judgment in favor of the Estate on Count 8 of the amended complaint.

### f. Count 10 — Equitable Estoppel

{¶ 91} Count 10 of the amended complaint set forth a claim for equitable estoppel. In relevant part, Widok sought to estop the Estate, and those intending to recover from the Estate, from "preventing Widok from presenting his proper claims and obtaining his rightful monies."

{¶ 92} The doctrines of equitable and promissory estoppel, while related, contain distinctions. Under the doctrine of equitable estoppel, "'a representation of past or existing fact made to a party who relies upon it reasonably may not thereafter be denied by the party making the representation if permitting the denial would result in injury or damage to the party who so relies.'" *Hortman v. Miamisburg*, 110 Ohio St.3d 194, 2006-Ohio-4251, 852 N.E.2d 716, ¶ 20, quoting 4 R. Lord, *Williston on Contracts*, Section 8:3, 28-31 (4th Ed.1992). "'The purpose of equitable estoppel is to prevent actual or constructive fraud and to promote the ends of justice.'" *Doe v. Archdiocese of Cincinnati*, 109 Ohio St.3d 491, 2006-Ohio-2625, 849 N.E.2d 268,

¶ 43, quoting *Ohio State Bd. of Pharmacy v. Frantz*, 51 Ohio St.3d 143, 145, 555 N.E.2d 630 (1990).

> The party claiming estoppel "'must demonstrate: (1) that the defendant made a factual misrepresentation; (2) that is misleading; (3) that induces actual reliance which is reasonable and in good faith; and (4) which causes detriment to the relying party.'" *Clark v. Univ. Hosps. of Cleveland*, 8th Dist. Cuyahoga No. 78854, 2001 Ohio App. LEXIS 3832, 14-15 (Aug. 30, 2001), quoting *Livingston v. Diocese of Cleveland*, 126 Ohio App.3d 299, 710 N.E.2d 330 (8th Dist.1998).

*N. Frozen Foods, Inc. v. Farro*, 2019-Ohio-5344, 138 N.E.3d 1223, ¶ 25 (8th Dist.).

{¶ 93} In turn, promissory estoppel is defined as "'[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.'" *Hortman* at ¶ 23, quoting 1 Restatement of the Law 2d, Contracts, Section 90, at 242 (1981). In order to establish a claim for promissory estoppel, the party must prove "(1) a clear, unambiguous promise, (2) that the person to whom the promise was made relied on the promise, (3) that reliance on the promise was reasonable and foreseeable, and (4) that the person claiming reliance was injured as a result of reliance on the promise." *Ford Motor Credit Co. v. Ryan*, 189 Ohio App.3d 560, 2010-Ohio-4601, 939 N.E.2d 891, ¶ 96 (10th Dist.), citing *Pappas v. Ippolito*, 177 Ohio App.3d 625, 2008-Ohio-3976, 895 N.E.2d 610, ¶ 55 (8th Dist.). "Thus, the key distinction between the two doctrines [of promissory and equitable estoppel] is whether the estoppel arises from a promise and not a misstatement of fact." *Hortman* at ¶ 24.

{¶ 94} As stated, there remain issues of material fact regarding the existence of an oral contract and whether Mary entered the oral agreement in furtherance of her own pecuniary interests, so as to preclude the application of the statute of frauds. These matters must be resolved by a trier of fact. If, however, Widok's breach of contract claim proves unsuccessful on the merits, we find Widok has not presented sufficient facts to warrant the application of equitable estoppel as an alternative theory of relief.

{¶ 95} In this case, Count 10 of the amended complaint and the materials attached to Widok's brief in opposition to summary judgment do not identify a misleading misrepresentation of fact that was alleged to have been made by Mary. Rather, Widok's equitable estoppel claim relies exclusively on Mary's alleged promises. *See Hortman*, 110 Ohio St. 3d 194, 2006-Ohio-4251, 852 N.E.2d 716, at ¶ 24. ("Promissory estoppel and estoppel by conduct are two entirely distinct theories. The latter does not require a promise."). Under the foregoing circumstances, Widok's theory of equitable estoppel fails. Accordingly, we find the trial court did not err in granting judgment in favor of the Estate on Count 10 of Widok's amended complaint.

### g. Count 12 — Intentional Interference with Expectancy of Inheritance

{¶ 96} Count 12 of the amended complaint set forth a claim for intentional interference with expectancy of inheritance. The complaint alleged, in relevant part:

> As stated throughout this amended complaint, Widok has stated repeatedly that both Joan Gullace as well as Mary Wolf promised him, and for that matter, his wife, an inheritance based upon continuing to

do work for both of them during their lives. Widok believes and maintains that there has been intentional interferences by one or more defendants with his expectancy of inheritance on many different levels. * * * Widok maintains that he had a reasonable certainty that the expectation of inheritance would have been realized but for the interference of one or more of the defendants[,] including Mary Wolf[,] on the inheritance from Joan Gullace and the current defendants on the inheritance from Mary Wolf.

{¶ 97} The elements of the tort of intentional interference with expectation of inheritance are (1) an existence of an expectancy of inheritance in the plaintiff; (2) an intentional interference by a defendant with the expectancy of inheritance; (3) conduct by the defendant involving the interference which is tortious, such as fraud, duress or undue influence, in nature; (4) a reasonable certainty the expectancy of inheritance would have been realized, but for the interference by the defendant; and (5) damage resulting from the interference. *Firestone v. Galbreath*, 67 Ohio St.3d 87, 88, 616 N.E.2d 202 (1993).

{¶ 98} In its motion for summary judgment, the Estate argued that, in the absence of a written agreement with Joan, Widok failed to establish that he had an expectancy of an inheritance from Joan. The Estate properly states that, pursuant to R.C. 2107.04, "no agreement to make a will or to make a devise or bequest by will shall be enforceable unless it is in writing." However, a claim for intentional interference with an expectation of inheritance does not require a vested right of inheritance. *Firestone v. Galbreath*, 25 F.3d 323, 325-326 (6th Cir.1994) ("A cause of action for tortious interference with expectancy of inheritance, however, protects a more attenuated claim to the decedent's property—a claim which need not rise to

the level of a vested interest in order to be protected as a legitimate expectancy.")  In this case, Widok and his wife provided extensive testimony regarding their close relationship with Joan and the statements she made during her lifetime that were reasonably interpreted as a manifestation of Joan's intent to provide for Widok and his wife in her will.  In our view, whether Widok had an expectation of inheritance sufficient to succeed on his claim is an issue of fact.

{¶ 99} The Estate further argued that Widok's claim is barred because he failed to exhaust all appropriate remedies in the probate court.  The Estate notes that Widok did not attempt to admit a lost will for Joan's estate, and did not pursue a creditor's claim against Joan's estate.  In *Firestone*, 67 Ohio St.3d 87, 616 N.E.2d 202, the Ohio Supreme Court explicitly declined to reach the issue of the "exhaustion of other possible remedies."  *Id.* at 88.  However, the Tenth District has previously held that "a claim for intentional interference with expectancy of inheritance may not be pursued if adequate relief is available to the plaintiff through probate procedures ***."  *Roll v. Edwards*, 156 Ohio App.3d 227, 2004-Ohio-767, 805 N.E.2d 162, ¶ 28 (4th Dist.).

{¶ 100} This court has yet to adopt the Tenth District's position.  Nevertheless, Widok's claim in this case relies on allegations that Mary interfered with his expectancy of inheritance by perpetrating an alleged fraud, i.e., intentionally destroying Joan's will.  As discussed, the probate court is a court of limited jurisdiction.  It has only the powers granted to it by statute.  Relevant to this claim, the Ohio Supreme Court has explained that, "generally speaking, the probate

division has no jurisdiction over claims for money damages arising from allegations of fraud." *Schucker v. Metcalf,* 22 Ohio St.3d 33, 35, 488 N.E.2d 210 (1986). *See also Dumas v. Estate of Dumas*, 68 Ohio St.3d 405, 408, 627 N.E.2d 978 (1994) ("Even though [plaintiff] seeks an order to rescind the transfer of assets of the trust * * * which order, if granted may affect the administration of [the] probate estate, her primary aim is still the recovery of monetary damages from the alleged fraud * * * [and] the issues raised * * * were solely within the jurisdiction of the general division * * *."); *Dallas v. Childs*, 8th Dist. Cuyahoga No. 65150, 1994 Ohio App. LEXIS 2694, 4-5 (June 23, 1994) ("As a matter of law, a probate court has no jurisdiction over a claim for money damages resulting from fraud."), citing *Alexander v. Compton*, 57 Ohio App.2d 89, 385 N.E.2d 638 (1978); *DiPaolo v. DeVictor*, 51 Ohio App.3d 166, 555 N.E.2d 969 (10th Dist.1988). Because Widok's intentional interference with his expectancy of inheritance relies on the allegedly fraudulent conduct of Mary, we are unable to conclude that Widok would have been afforded adequate relief in the probate court for the alleged wrongs committed by Mary. *Firestone*, 895 F.Supp. 917, at 926 ("[c]ourts must look to whether the probate court can provide the plaintiff with adequate relief in the form of the actual damages which would be recovered in the tort action; punitive damages awards are not considered a valid expectation in this context.") *See also Cunningham v. Cunningham*, 10th Dist. Franklin No. 08AP-1049, 2009-Ohio-4648, ¶ 19.

{¶ 101} Resolving all doubts in favor of Widok, we find there remain genuine issues of material fact as to the elements of Widok's claim for intentional

interference with an expectancy of inheritance. Reasonable minds could come to different conclusions as to whether Widok had an expectation of an inheritance from Joan, whether Mary intentionally destroyed Joan's will, and if so, whether Widok suffered damages based upon a reasonable certainty that his expectancy of inheritance would have been realized but for the interference by Mary. Accordingly, the trial court erred by granting summary judgment in favor of the Estate on Count 12 of the amended complaint.

{¶ 102} Widok's sixth assignment of error is sustained in part, overruled in part.[1]

## 2. Scouloukas's Motion for Summary Judgment

{¶ 103} In his fifth, seventh, and eighth assignments of error, Widok argues the trial court erred as a matter of law in granting summary judgment in favor of Scouloukas.

{¶ 104} With respect to Counts 1, 2, 3, 4, 6, 7, and 8 of the amended complaint, Widok does not make any arguments regarding the specific evidence supporting these claims against Scouloukas. In addition, Widok does not dispute that he confirmed during his deposition testimony that these claims did not pertain to Scouloukas. (Widok depo. vol. II., at 205-215.). Nevertheless, Widok contends that the questions posed by counsel for Scouloukas were improper because they required Widok, a layperson, to make legal conclusions in violation of Evid.R 701.

---

[1] Count 13 relates to the undue influence exerted upon Mary. In turn, Count 14 relates to the alleged conduct of Scouloukas. Therefore, these remaining counts do not state a claim against the Estate.

As such, Widok suggests the trial court erred in determining that he failed to establish that these counts pertained to Scouloukas based on his own admissions.

{¶ 105} A lay "'witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony of the determination of a fact in issue." Evid.R. 701. Such testimony "is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact." Evid.R. 704.

{¶ 106} After careful review, we find nothing particularly objectionable regarding Widok's testimony that Counts 1, 2, 3, 4, 6, 7, and 8 of the amended complaint did not pertain to Scouloukas. Widok's responses during his deposition were based on his perception of events and were helpful in explaining the scope of his allegations.

{¶ 107} Moreover, even if this court were to ignore Widok's own characterization of his claims against Scouloukas during his deposition, we find no evidence in the record to suggest that Counts 1, 2, 3, 4, 6, 7, and 8 applied to Scouloukas. As stated, Counts 1 through 8 of the amended complaint relate to the alleged promises made to Widok by Mary, and there is no language in the complaint, or evidence attached to the brief in opposition, to suggest Scouloukas was a party to, or otherwise liable for, the alleged promises of Mary. Accordingly, we find the trial court did not error in granting summary judgment in favor of Scouloukas on Counts 1, 2, 3, 4, 6, 7, and 8 of the amended complaint.

{¶ 108} Regarding Counts 10, 12, 13 and 14, Widok argues the evidence attached to his brief in opposition demonstrates that (1) "Scouloukas committed spoliation of evidence," (2) "the finding that equitable estoppel does not apply to Scouloukas was error," and (3) dismissal of the "interference and undue influence [claims] as to Scouloukas on summary judgment was error." We address these claims separately.

### a. Count 10 — Equitable Estoppel

{¶ 109} As stated, Count 10 of the amended complaint asked the court to "prevent the Estate and/or those intending to recover from the Estate to be estopped from preventing Mr. Widok from presenting his proper claims and obtaining his rightful monies." On appeal, Widok contends that the trial court erred in determining that the equitable estoppel claim does not apply to Scouloukas. Widok suggests that there remain genuine issues of material fact regarding Scouloukas's role in the destruction of Joan's will, his deletion of a recorded meeting with Mary prior to her death, and his distribution of nonprobate assets.

{¶ 110} After a review of the record, we find the trial court did not err in granting summary judgment in favor of Scouloukas on Count 10 of the amended complaint. As noted by the trial court, Scouloukas is not directly connected to the estate, and is not an individual seeking to recover from the estate. Moreover, Widok has not identified any evidence indicating that Scouloukas made a statement or representation of fact to Widok that was misleading and detrimentally induced Widok's actual reliance.

## b. Count 12 and 13 —Intentional Interference with Expectancy of Inheritance and Undue Influence/ Fraud

{¶ 111} As stated, Count 12 of the amended complaint alleged that one or more of the defendants intentionally interfered with his expectancy of inheritance from both Joan and Mary. Similarly, Count 13 of the amended complaint alleges that one or more of the defendants improperly influenced Mary to change her will "in her dying weeks," and change the beneficiary designation on accounts under the control of Scouloukas.

{¶ 112} Scouloukas argued in his motion for summary judgment that he was entitled to judgment as a matter of law on Counts 12 and 13 of the amended complaint because "he never handled or dealt with the wills or probate assets of Mary," and "Widok testified that all nonprobate assets handled by Scouloukas were transferred appropriately."

{¶ 113} In the course of this litigation, Widok deposed Scouloukas on December 13, 2017, and questioned him extensively about his relationship with Joan and Mary. Relevant to Counts 12 and 13, Scouloukas testified that while serving as Joan and Mary's financial advisor, he handled their nonprobate assets, and did not discuss or otherwise review any written wills. (Scouloukas depo at 16.) Regarding Mary's nonprobate assets, Scouloukas testified that he modified the designated beneficiaries pursuant to Mary's directives, and that Widok was never a named beneficiary of her nonprobate assets. (*Id.* at 35, 37, 50.)

{¶ 114} Widok also provided extensive testimony regarding Scouloukas's role as Joan and Mary's financial advisor and his handling of their nonprobate assets.

Widok did not dispute that all nonprobate assets handled by Scouloukas were transferred appropriately, and in accordance with Mary's wishes. (Widok depo. vol. II., at 13, 18. 19.) Widok further conceded that he was not entitled to "a penny" of the assets handled by Scouloukas, and that the "correct beneficiaries" received Mary's nonprobate assets in accordance with her wishes. (*Id.* at 8-9, 12, 18.)

{¶ 115} Notwithstanding his own deposition testimony about Mary's nonprobate assets, Widok argued in his opposition brief that there remain genuine issues of fact regarding whether Scouloukas intentionally interfered with, or unduly influenced, Widok's promised inheritance from both Joan and Mary. Specifically, Widok maintained that Scouloukas, in conjunction with Mary, sought to take advantage of monies received from Joan that never should have been part of the nonprobate process. Widok alleged that Mary admitted to him prior to her death that she sought the advice and guidance of Scouloukas regarding not only her obligations to pay Widok what he was asking, but also what she should do about the will that she took from Joan's kitchen drawer, which did not name Mary or any of the current beneficiaries, who have received the monies, as people to receive under Joan's will. Widok testified that Mary confessed to him as follows:

> She showed the will to Joe Scouloukas. Joe told her that if she made that will public, she would lose all the money that she was inheriting and would get paid $300,000. Take the will and tear it up and destroy it, which she did.

(Widok depo. vol. I., at 86.)

{¶ 116} Thus, Widok submits that because Mary admitted that Scouloukas advised her to destroy Joan's will to further her own pecuniary interests, there is a factual question as to whether Scouloukas interfered with his inheritance through Joan's will, and whether Scouloukas participated in the decision not to pay Widok the monies promised to him by Mary, despite his valid contractual claims.

{¶ 117} For the reasons previously discussed, we find there remain genuine issues of material fact regarding whether Scouloukas conspired with Mary to destroy Joan's will after reviewing the instrument, and if so, whether Scouloukas's conduct constituted an intentional interference with Widok's expectancy of inheritance and/or undue influence. To be clear, there is no evidence to suggest that Scouloukas interfered with, or otherwise unduly influenced, the distribution of Mary's nonprobate assets. However, there is no dispute that Scouloukas had a professional interest in the assets that were distributed to his client when Joan died intestate. And, there is competing evidence regarding whether Joan's will was destroyed — an instrument that may have greatly affected the breadth of Mary's nonprobate assets.

{¶ 118} Based on the foregoing, we find the trial court erred by granting summary judgment in favor of Scouloukas on Counts 12 and 13 of the amended complaint.

### c. Count 14 — Spoliation of Evidence

{¶ 119} To establish a claim for spoliation of evidence, a plaintiff must prove the following:

> (1) pending or probable litigation involving the plaintiff, (2) that the defendant knew that litigation exists or is probable, (3) willful

destruction of evidence by the defendant designed to disrupt the plaintiff's case, (4) actual disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's actions.

*Elliott-Thomas v. Smith*, 154 Ohio St.3d 11, 2018-Ohio-1783, 110 N.E.3d 1231, ¶ 10, citing *Smith v. Howard Johnson Co.*, 67 Ohio St.3d 28, 29, 615 N.E.2d 1037 (1993).

"[C]auses of action for spoliation of evidence are designed to place responsibility and accountability on parties who were actually in possession of evidence that existed at one time but who later do not provide this evidence and do not provide an adequate explanation for failing to do so."

*Wheatley v. Marietta College*, 2016-Ohio-949, 48 N.E.3d 587, ¶ 105 (4th Dist.), quoting *Keen v. Hardin Mem. Hosp.*, 3d Dist. Hardin No. 6-03-08, 2003-Ohio-6707, ¶ 16. "A spoliation claim cannot be based upon conjecture that evidence might have existed and that a party might have destroyed it." *Id.*

{¶ 120} In this case, Scouloukas testified that while serving as Mary's financial advisor, she changed her nonprobate beneficiaries multiple times. Scouloukas explained that Mary originally started with seven beneficiaries and eventually settled on three beneficiaries. (Scouloukas depo. at 34). Prior to the final designation of beneficiaries, Scouloukas attempted to record a conversation with Mary, with her consent. (*Id.* at 35). During this meeting, the only thing that was discussed was changing the seven beneficiaries to three. (*Id.* at. 36, 37). Scouloukas testified that he does not have a recording of the meeting because he either did not actually record the meeting or he inadvertently recorded over the meeting. (*Id.* at 35). Scouloukas testified that he only attempted to record one meeting with Mary. (*Id.* at 35, 36).

{¶ 121} After careful review of the record, we find Widok's spoliation claim against Scouloukas fails as a matter of law. Beyond mere conjecture, Widok has not presented any evidence to rebut Scouloukas's testimony that the recorded meeting was limited to a discussion with Mary regarding her designation of nonprobate beneficiaries. As stated, Widok was never a beneficiary of Mary's nonprobate assets. Because Widok had no personal or legal interest in Scouloukas's conversation with Mary about the designation of her nonprobate assets, there is no factual basis to suggest that Scouloukas knew litigation involving Widok was probable.

{¶ 122} Moreover, Widok has not pointed to any affirmative evidence to show that Scouloukas willfully destroyed the recording to impede Widok's case. Speculation and allegations that evidence was willfully destroyed so as to disrupt the party's case will not suffice to create a genuine issue of material fact that precludes summary judgment. *See Fifth Third Bank v. Gen. Bag Corp.,* 8th Dist. Cuyahoga No. 92783, 2010-Ohio-2086, ¶ 42 (upholding trial court's decision to deny motion to amend complaint to include spoliation of evidence claim when appellants offered no evidence that opposing party acted willfully); *Sutliff v. Cleveland Clinic Found.,* 8th Dist. Cuyahoga No. 91337, 2009-Ohio-352, ¶ 33 (implying that mere destruction of evidence does not lead to natural conclusion that evidence was willfully destroyed and stating that a party's speculation that evidence was willfully destroyed is not sufficient to prevent summary judgment; instead, party must produce evidence). In addition, speculation that willfully destroyed evidence would have helped the

plaintiff's case is insufficient. *Tomas v. Nationwide Mut. Ins. Co.*, 79 Ohio App.3d 624, 633, 607 N.E.2d 944 (10th Dist.1992).

{¶ 123} On appeal, Widok does not reference any specific evidence to support his assertion that Scouloukas "either intentionally or recklessly destroyed the evidence" to disrupt his case. Rather, Widok speculates that "there was *likely* willful destruction by Scouloukas designed to disrupt [Widok]'s case" and that the information contained on the recording "was *likely* germane." (Emphasis added.) Similarly, Widok does not direct this court to any evidence that the alleged destruction of the recording actually disrupted his case. In fact, Widok conceded during his deposition that he "[has] no idea what would be on [the] cassette" that was used to record the meeting between Scouloukas and Mary. (Widok depo. vol. II., at 18.) Thus, Widok relies exclusively upon suppositions, which are insufficient to create a genuine issue of material fact. *Continenza v. Tablack*, 7th Dist. Mahoning No. 02CA250, 2003-Ohio-6719, ¶ 45; *Wheeler v. Wise*, 133 Ohio App.3d 564, 574, 729 N.E.2d 413 (10th Dist.1999).

{¶ 124} Widok's fifth assignment of error is sustained in part and overruled in part. His seventh and eighth assignments of error are overruled in the entirety.

{¶ 125} Judgment affirmed in part, reversed in part, and remanded to the trial court for further proceedings concerning Counts 1, 2, 3, 4, and 12 against the Estate, and Counts 12 and 13 against Scouloukas.

It is ordered that appellant and appellees share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, ADMINISTRATIVE  JUDGE

PATRICIA ANN BLACKMON, J., and
KATHLEEN ANN KEOUGH, J., CONCUR